LARKIN G. CLEVELAND v. JOHN H. WILLIAMS, ADM'R.

The court below charged the jury as follows: "If you find from the evidence that the corn in question, that is, the hundred bushels of corn, was in a bulk with other corn, and had not been measured out and separated from the bulk, so that the same could be identified previous to the death of Hall, then the sale was incomplete, and you will find for the plaintiff the value of the corn as proved." This was error.

By the common law, if a seller make a proposition, and the buyer accept, and the goods are in the possession of the seller, and nothing remains to be done to identify them, or in any way prepare them for delivery, the sale is complete, and the property in the goods passes at once. The buyer acquires not a mere *jus ad rem*, but an absolute *jus in re*, and he may demand delivery at once on tender of the price, and sue for the goods as his own, if delivery be refused.

The 17th section of the statute of frauds and perjuries, (Charles II,) which requires that delivery by the vendor and acceptance by the vendee of part of the goods sold, or something given in earnest or part payment to bind the bargain, or that some note or memorandum of the bargain, in writing, to be signed by the parties, &c., in order to give validity to the contract,

has never been re-enacted in Texas, and it has not become a part of our common law. (Paschal's Dig., Art. 978, Note 418.)

No sale is complete, so as to vest in the vendee an immediate right of property, so long as anything remains to be done between the buyer and seller in relation to the goods. The goods sold must be separated and identified by marks and numbers, so as to be completely distinguished from all other goods, or from the bulk or mass with which they happen to be mixed.

The goods sold must be ascertained, designated, and separated from the stock or quantity with which they are mixed, before the property can pass.

Until this be done, it is merely a sale without a subject-matter *in esse*, which cannot take effect *in presenti*.

Where the vendor sold the corn in his crib before his death, and appointed an agent to measure and deliver it, which the agent did after the death of the principal, but before it was known to the parties, the title did not pass, and the administrator of the deceased had the right to recover the corn.

The only exception is the case where the power or authority is coupled with an interest in the thing actually vested in the agent. The reason of this exception is entirely compatible with the general ground on which the rule is founded: it is, that the agent, having the legal title to the property in himself, is capable of transferring it in his own name, notwithstanding the death of his principal; and the death of his principal, therefore, has no operation upon his acts.

This was not so by the civil law, but, by the common law, the death of the principal is an instantaneous and absolute revocation of the authority of the agent, unless the power be coupled with an interest.

APPEAL from Polk. The case was tried before Hon. SAMUEL A. WILSON, one of the district judges.

The petitioner, who sues as the administrator of the estate of Thomas B. Hall, deceased, alleges that said Hall died in September, 1860; that on the day of his death he was possessed, as of his own property, of one hundred bushels of corn, worth $1 50 per bushel; that after the death of said Hall the defendant took the said corn, without authority, and converted the same to his own use, and, therefore, lays damages at $500.

The defendant plead, 1st, general demurrer; 2d, general denial; and, 3d, specially, that in the lifetime of the said Hall the respondent loaned to him $200, for which Hall gave to him his promissory note; that afterwards said Hall sold to him one hundred bushels of corn, at $1 per

bushel, in part payment of said note, which respondent duly credited thereon; that said corn, so bought and paid for before the death of said Hall, is the same for which he is sued; that the balance of said note he now holds as a valid and subsisting claim against said estate, unpaid, &c.

The evidence is in substance as follows: John S. Cleveland states, that in the fall of 1860 Thomas B. Hall told him that he had sold to Larkin G. Cleveland one hundred bushels of corn in payment of a debt he owed to said Larkin G. Cleveland, and that said Hall told him (witness) to retain that amount of corn out of a large bulk of corn then in his (Hall's) crib, and that C. B. Hall would measure it. A few weeks after this Thomas B. Hall died, away from home, on his way to Galveston. After the death of Thomas B. Hall, (which was then unknown,) C. B. Hall measured and delivered the corn to Larkin G. Cleveland, measuring it from a large bulk of corn then in Hall's crib.

C. B. Hall, brother of deceased, testified to the same facts. By agreement of counsel, it was admitted, as if proved, that Larkin G. Cleveland held a note on Thomas B. Hall for $200, and that it was credited with one hundred bushels of corn, at $1 per bushel, amount received as measured by C. B. Hall.

The charge complained of is as follows: "3d. If you find from the evidence that the corn in question, that is, the one hundred bushels, was in a bulk with other corn, and had not been measured out and separated from the bulk, so that the same could be identified previous to the death of Hall, then the sale was incomplete, and you will find for the plaintiff the value of the corn as proved."

There were a verdict and judgment for plaintiff, from which the defendant appealed, and assigned for error the mistake in the charge.

*C. L. Cleveland,* for appellant.—The measuring of the corn was merely a formal act, which could be well executed

after the death of Hall, by the party nominated for that purpose. It is admitted, as a general proposition, that the death of the principal operates a revocation of an agency. But where an authority is coupled with an interest, or where it is given for a valuable consideration, or as security, it is otherwise. (Story on Agency, § 477.) The reason of the exception is entirely compatible with the general ground on which the rule is founded. It is, that the agent, having the legal title to the property vested in himself, is capable of transferring it in his own name, notwithstanding the death of the principal, and the death of the principal has no operation on his act. The power given by the principal, under such circumstances, is rather an assent or agreement that the agent may transfer the property vested in him, free from any equities of the principal, than strictly a power to transfer. (Story on Agency, § 489.) Nice distinctions are drawn in the law books as to what is necessary "to complete" a sale, especially so where the question of lien for price is involved, or the right of a subsequent purchaser, or of fraud as against creditors. But in this case no such questions arise.

As between the parties, the right of property passed. (1 Pars. on Cont., § 5, bot. page 465; and Noy's Max., 88.) The corn was bought and paid for; it only remained to be measured. This was to be done, not by the vendor, nor the vendee, but by a third party, acting for both, in his own name. What remained to be done was to be performed by John S. Cleveland and C. B. Hall. The former was "to retain" the corn; the latter to measure it; trusts cognate with the sale, springing out of the contract of sale, reposed in them, upon consideration paid attaching at once to the property and in them, to be executed for the benefit of L. G. Cleveland, which they could and did execute in their own names; and that is the true test of the lawfulness of the act. Had the same power been given to the purchaser by the vendor "to retain" and measure, under like

circumstances, the death of the vendor clearly would not revoke that power, because it would be coupled with an interest. Does the rule change when the power is conferred on a third party to do the same thing? If so, its flexibility is marvelous. (Hunt v. Rousmanier's Admr.. 8 Wheat., 201; and Knapp v. Alford, 10 Page, 205.) Further, the measuring and delivery were before the death of T. B. Hall was known. The act was in good faith, and might well rest on that ground, if it were simply the execution of a naked power. (Cassidy v. McKenzie, 4 Watts & Serg., 282.) But what shall be said of the equities of the case? Cleveland's debt, to the amount of the credit given thereon, is extinguished. Shall the estate of Hall get the benefit of the judgment besides, or shall Cleveland be driven to some sort of doubtful remedy to get back the price paid? Such circuity is not necessary to adjust the equities arising, and is abhorrent to a sound interpretation of the principles pervading the authorities.

The attention and inquiry of the jury were limited alone to the fact, that the measuring of the corn occurred after the death of T. B. Hall. The assumption that the contract of sale was incomplete, or that, if incomplete, it could not be completed after Hall's death, by measuring and delivery, is not well founded, and for that error the cause should be reversed.

No brief for the appellee has been furnished to the *Reporter.*

COKE, J.—The only questions presented by the assignments of error, necessary to be considered, arise on the third clause in the charge of the court to the jury, which reads as follows:

"If you find, from the evidence, that the corn in question, that is, the hundred bushels of corn, was in a bulk with other corn, and had not been measured out and sepa-

rated from the bulk, so that the same could be identified, previous to the death of Hall, then the sale was incomplete, and you will find for the plaintiff the value of the corn as proved."

Considering this instruction with reference to the facts of this case, it involves two propositions: first, that in order to complete the sale of the corn, and pass the title to Cleveland, it was necessary that it should have been separated from other corn and measured, so as to be identified, and capable of specific delivery to and possession by the vendee; and, second, that if not so completed in the lifetime of Hall, the act of his agent, C. B. Hall, in separating, measuring, and delivering the corn after the death of his principal, was unauthorized and void, and conferred no right upon Cleveland to the corn delivered. We are of opinion that the charge on both propositions is correct.

By the common law, if the seller make a proposition and the buyer accept, and the goods are in the possession of the seller, and nothing remains to be done to identify them, or in any way prepare them for delivery, the sale is complete, and the property in the goods passes at once. The buyer acquires not a mere *jus ad rem*, but an absolute *jus in re*, and he may demand delivery at once on tender of the price, and sue for the goods as his own if delivery be refused. (2 Kent's Com., 492; 2 Pars. on Cont., 320; 1 Pars. on Cont., 441; Story on Sales, § 300.)

An innovation upon the principles of the common law on this subject was made in England by the 17th section of the statute of frauds and perjuries of Charles II, which has been substantially re-enacted in nearly all the States of the Union except Texas. This section requires delivery by the vendor, and acceptance by the vendee of part of the goods sold, or something given in earnest or part payment to bind the bargain, or that some note or memorandum in writing of the bargain be signed, &c., &c., in order to give validity to the contract, so that an action for its enforcement may

xxix—14.

be maintained. This section of the statute of Charles has never been enacted or of force in this State, and the common law, unaffected by its provisions, furnishes the rule by which the validity of contracts of sale of chattels must be tried here. Delivery as between the parties is not essential to the completeness of a sale of a chattel, unless made so by the terms of the bargain. (Story on Sales, § 300; 2 Kent's Com., 39, 492; 1 Pars. on Cont., 441.) But it is essential that nothing shall remain to be done (by the vendor) to the thing sold to put it into a condition for sale, or to identify it, or to discriminate it from other things. If anything remains to be done by the vendor which is material or important before the vendee can identify or possess the thing sold, or before it becomes deliverable, the sale is executory and incomplete, and the property in it does not pass absolutely to the vendee. Judge Story, in his work on Sales, says: "No sale is complete, so as to vest in the vendee an immediate right of property, so long as anything remains to be done between the buyer and seller in relation to the goods. The goods sold must be separated and identified by marks and numbers, so as to be completely distinguished from all other goods, or from the bulk or mass with which they happen to be mixed." (Story on Sales, § 296.)

Chancellor Kent, in his Commentaries, vol. 2, p. 496, says: "If anything remains to be done, as between the seller and buyer, before the goods are to be delivered, a present right of property does not attach in the buyer. This is a well-established principle in the doctrine of sales. But where everything is done by the seller, as to a parcel of the quantity sold, to put the goods in a deliverable state, the property, and consequently the risk, passes to the buyer; and, as to so much as requires further acts to be done on the part of the seller, the property and the risk remain with the seller. The goods sold must be ascertained, designated, and separated from the stock or quantity with which they are mixed, before the property can pass."

The same doctrine is asserted with equal emphasis by Mr. Parsons in his work on Contracts, vol. 1, p. 441, and in Brown on Sales, p. 44. While these general principles are recognized and affirmed by an almost unbroken concurrence of the authorities, there is much apparent conflict in their practical application in the adjudicated cases. We understand the reason underlying these principles to be the fundamental one, that until the property, which is the subject of the sale, is designated and defined, it is, as it were, a sale without a subject-matter *in esse,* which cannot take effect *in presenti,* for the want of that necessary ingredient in a sale to act on, and is, therefore, necessarily executory and incomplete. The purchaser, in such a sale, cannot maintain an action to recover specific property, if delivery be refused, because he has no right in any specific part of the bulk, an undefined portion of which he has contracted for. In such an action he must describe and identify, with reasonable certainty, according to its character, the property he sues for, and this he cannot do, because his rights are indefinite, and cannot be attached to or located in any designated part of the mass. He has not that *jus in re* which alone entitles him to recover, and without which his purchase is incomplete. (6 East., 614.) This reason does not exist where the subject-matter of the sale is designated and defined, as where the whole bulk is sold. It is true, it may have to be weighed, counted, or measured; but if this is to be done to enable the parties to make a settlement, and not for the purpose of completing the sale, the right passes to and vests in the purchaser. It is certainly correct, as laid down in the books, that when anything remains to be done by the seller, such as counting, weighing, or measuring, the title does not pass, when either of these operations is necessary in order to separate the goods from a larger mass, of which they form a part; but when the entire mass is sold and must be measured, simply with a view to the ascertainment of its price,

for the purpose of a settlement, the better opinion, on principle and authority, is, that the title passes. By keeping the distinction between a specific and an indefinite commodity in view, it is believed that most of the cases upon this subject can be explained, and their apparent conflict reconciled. (Macomber v. Parker, 13 Pick., 182; Cunningham v. Ashbrook, 20 Mo., 560; Scott v. Wills, 6 Watts & Serg., 368; Riddle v. Varnum, 20 Pick., 283–284; Crofoot v. Bennett, 2 Comst., 260.)

This distinction is forcibly put by Mr. Justice Strong, delivering the opinion of a majority of the supreme court of New York, in Crofoot v. Bennett, in which he says: "But if the goods sold are clearly identified, then, although it may be necessary to number, weigh, or measure them, in order to ascertain what would be the price of the whole at a rate agreed upon between the parties, the title will pass. If a flock of sheep be sold at so much the head, and it is agreed that they shall be counted after the sale, in order to determine the entire price of the whole, the sale is valid and complete. But if a given number out of the whole are sold, no title is acquired by the purchaser until they are separated, and their identity thus ascertained and determined. The distinction in all these cases does not depend so much upon what is to be done, as upon the object which is to be effected by it. If that be specification, the property is not changed; if it be merely to ascertain the total value at designated rates, the change of title is effected."

The same doctrine is distinctly maintained by the supreme court of Massachusetts, in Macomber v. Parker and in Riddle v. Varnum, and by the supreme court of Missouri, in Cunningham v. Ashbrook, and is believed to be well sustained by a great majority of all the adjudicated cases. An application of these principles to this branch of the charge of the court fully vindicates its correctness with reference to the facts of this case.

Passing to the consideration of the remaining proposition involved in the charge of the court under discussion, we are of opinion that the setting apart and designation by measurement of the corn from the bulk of which it was a part, by C. B. Hall, the agent, after the death of his principal, cannot aid the rights of the appellant, for the reason that the death of the principal operated a revocation, or, it might more properly be said, a destruction of the power of the agent.

This is an ancient and well-settled doctrine of the common law, and it seems that the fact of the agent having acted in good faith, in ignorance of the death of his principal, is not sufficient to take a case out of the operation of this general rule, where the power is a naked one, not coupled with an interest.

"The only admitted exception," says Judge Story, in his work on Agency, "that properly constitutes an exception to this general rule, is the case where the power or authority is coupled with an interest in the thing, actually vested in the agent. The reason of this exception is entirely compatible with the general ground on which the rule is founded. It is, that the agent, having the legal title to the property in himself, is capable of transferring it in his own name, notwithstanding the death of his principal, and the death of his principal therefore has no operation upon his act." (Story on Agen., § 489.)

It is said by Chancellor Kent, vol. 2 of his Commentaries, p. 646, that "By the civil law, and the law of those countries which have adopted the civil law, the acts of an agent, done, *bona fide*, after the death of his principal and before notice of his death, are valid and binding on his representatives. But this equitable principle does not prevail in the English law, and the death of the principal is an instantaneous and absolute revocation of the authority of the agent, unless the power be coupled with an interest."

There are some authorities which go far towards main-

taining, that the common and civil law on this subject may be harmonized. So it is understood to have been held in Pennsylvania, in Cassidy v. McKenzie, 4 Watts & Serg., 282. In this case a payment made to an agent, after the death of the principal, was held binding on the representatives of the latter. Judge Story, in his work on Agency, inclines to the opinion, that the difference between the civil and the common law is more apparent than real, and that where the act must be done in the name of the principal, the same objection would obtain to it after the death of the principal in the foreign law as it does in our law, and that the difference between our law and the former seems to rest, not so much upon a difference of principle, as upon the difference in the modes of executing the authority.

He nevertheless admits the force and binding authority of the common law principle, while he confesses the greater liberality and equity of that which obtains in the civil law. (Story on Agency, §§ 495 to 498.)

The rule of our law, as to the time when the revocation of an authority by the act of the principal takes effect, is equally clear, comprehensive, and just. As to the agent himself, it takes effect from the time when the revocation is made known to him; and as to third persons when it is made known to them, and not before. And this the principal may do by making the revocation as notorious as the fact of agency was. Until it is thus made known, the principal is bound by the acts of his agent, done within the scope of his authority, upon the familiar principle, that where one of two innocent persons must suffer, he shall suffer who, by his confidence, or silence, or conduct, has misled the other. (1 Pars. on Cont., 60; 11 N. H., 397; Story on Agency, § 470.) This is in striking contrast with the other principle, which holds, where the revocation is implied from the death of the principal, that every act of the agent, though done in good faith, in pursuance of his authority, without notice of his principal's

death, is unauthorized and invalid. Harsh and unjust as must be the operation of this principle in many cases, it is two well settled by the authorities, English and American, to be departed from.

The leading argument upon which it is sustained in the books is, that the agent can do only what his principal may do, and must act in his principal's name, and that as a dead man can do no act, so a valid act cannot be done in a dead man's name. (Hunt v. Rousmanier's Administrator, 8 Wheat., 174; Story on Agency, § 488.) Accordingly, in apparent consonance with that course of reasoning, some respectable authorities seem strongly inclined to maintain the doctrine that, when the agency can be, and ordinarily is, properly executed in the name of the agent, without reference to the principal, the acts of the former, done after the death of the latter, without notice of the death, are valid and binding; though it must be admitted, that the cases relied on as illustrating this doctrine are usually either in fact powers coupled with an interest, or are governed by like analogies. (Story on Agency, §§ 33, 34, 496, 497; Davis v. Lane, 10 N. H., 413; 1 Pars. on Cont., 62; Dick v. Page, 17 Mo., 234; Russ. on Fac. and Brok., 360; Chitty on Com. & Mer., 223.)

In Robertson v. Paul, 16 Tex., 472, it was held by this court, that a power to sell, contained in a mortgage or deed of trust, although not revoked, on general principles, by the death of the grantor, being a power coupled with an interest, is inconsistent with our statute respecting the settlement of estates of deceased persons, and, therefore, cannot be executed after the death of the grantor. In this case, we have not deemed it necessary to consider the provisions of our statute in connection with the question, or to determine what influence, if any, it might have had if the power had been such a one as survived the death of the grantor, it being clear, on general principles, that the authority of the agent was of a character that was, *ipso*

*facto*, extinguished by the death of his principal. C. B. Hall, the agent, had no title or interest, legal or equitable, in the subject-matter of his agency. It is not pretended that he had possession of the corn that was in the crib and on the plantation of his principal, and the only authority he is shown to have had over it was, to set apart and measure the number of bushels contracted to the appellant. His was a naked power. Having executed it after it had been revoked by the death of his principal, the representatives of the latter are not bound by his unauthorized act. The jury were properly instructed, and their verdict is fully supported by the testimony.

There is no error in the judgment, and it is

AFFIRMED.