INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY, ET AL. v. J. W. OGBURN.

Decided May 9, 1901.

**1.—Sale—Delivery—Title Passing.**

It is not necessary, in order to complete a sale of goods, that they be delivered to the buyer; but the title passes when the goods are designated and identified and ready for delivery in accordance with the contract of sale.

**2.—Same—Contract for Railroad Ties—Conversion.**

Where plaintiff contracted with B. to sell him railroad ties to be delivered on a railroad right of way, where they were to be inspected by the railroad inspector to determine their acceptability and price, and the ties were so delivered, and were fairly inspected in the presence of plaintiff's agent, and the price was paid him in accordance with such inspection, he could not thereafter object to the sale because of the inspection and price, nor recover damages for conversion of the ties from the railroad company to which B. subsequently sold them.

**3.—Same—Notice Unavailing.**

Where the title to the goods has passed, notice by the seller to an intend-

ing purchaser that the former still claims title thereto, and forbidding the purchase thereof, does not render the latter liable for conversion in subsequently purchasing the goods.

Appeal from Smith. Tried below before Hon. J. G. Russell.

*W. B. Teagarden,* for appellant Railway Company.

*Gregg & Brooks,* for appellant Burkitt & Barnes.

*Marsh, McIlwaine & Fitzgerald,* for appellee.

PLEASANTS, Associate Justice.—This is a suit for the conversion of 13,011 railroad ties of the alleged value of $3662.69, brought by appellee against the appellant railroad company. The appellants Burkitt & Barnes were made defendants at the instance of the railroad company. The railroad company, in addition to a general denial, pleaded specially that it had a contract with Burkitt & Barnes by which they agreed to furnish it with a certain number of ties of the kind specified in said contract and at the prices named therein, said ties to be received and paid for by the railroad company in accordance with the classification made by its tie inspector; that pending this contract appellee, with full knowledge of the same, made, sold and delivered to Burkitt & Barnes the ties in question, executed a bill of sale of same to said Burkitt & Barnes, and received pay therefor in full, and said ties were delivered to said appellant by Burkitt & Barnes under their said contract; that Burkitt & Barnes, by the terms of their said contract with the railroad company, agreed to protect said company against all demands, costs, expenses, and attorney's fees growing out of the liens and claims of any person who might perform labor or service or furnish material or supplies in the execution of said contract, and that when the ties in question were delivered to said company, the said Burkitt & Barnes warranted their title to the same. Said company further alleged that it had incurred necessary costs and expense in defending this suit, setting out an itemized statement of same, including a charge of $200 attorneys' fees, and prayed that in the event the plaintiff recovered a judgment against it, that it have judgment against Burkitt & Barnes for the amount so recovered by plaintiff, and for its costs, expenses, and attorneys' fees.

Burkitt & Barnes' answer contains general and special exceptions to the answer of appellant railroad company, and general denial, and specially pleaded that they had a contract with appellee by which he agreed to furnish them a certain number of ties of the kind described in their contract with the railroad company; that the inspector of the railroad company classified said ties and the same were taken by said company and paid for by it in accordance with the classification of said inspector, and that the amount so paid by the railroad company has been by these defendants paid to the plaintiff; that if there was any fraud or mistake

in said inspection, said defendants Burkitt & Barnes had no notice of same at the time they accepted pay for said ties, and ought not to be bound thereby; and that if plaintiff is entitled to recover against the railroad company by reason of the fraudulent, wrongful, or capricious classification of said ties by said company's inspector, the said Burkitt & Barnes, not having been paid the full value of said ties by the railroad company, would not, under their contract, be liable to said company for the amount so recovered by the plaintiff.

The appellee filed a supplemental petition in which he alleged that the bills of sale executed by him and delivered to Burkitt & Barnes were not executed to pass the title to the ties described therein, but were intended as mortgages and were given to secure the said Burkitt & Barnes for money advanced to him by them. The trial of the cause in the court below resulted in a verdict and judgment for plaintiff against the railroad company for the sum of $669.73, and in favor of the railroad company against Burkitt & Barnes for said sum and the further sum of $200 attorney's fees and all costs of suit, from which judgment both defendants have appealed. The record discloses the following facts:

On the 12th day of January, 1897, Burkitt & Barnes entered into a contract with the International & Great Northern Railroad Company by which they agreed to furnish said company during said year 200,000 hewn crossties of certain specified dimensions and to be made of certain kinds of timber. Under this contract the railroad company agreed to pay Burkitt & Barnes 27 1-2 cents apiece for all ties manufactured in accordance with the specifications, and to pay 11 cents apiece for such ties as were not up to the specifications, but might be used by the railroad. It was expressly agreed that all ties furnished under this contract should be subject to the inspection of an inspector appointed by the railroad company, and unless accepted by such inspector, they would not be received by the railroad company. Shortly after the execution of this contract Burkitt & Barnes made a contract with the appellee in which he agreed to manufacture and deliver to them ties of the same class called for in their contract with the railroad company. Under this contract the ties manufactured by appellee were to be placed by him upon the right of way of the International & Great Northern Railroad, and were to be inspected by the inspector of said railroad, and paid for by Burkitt & Barnes in accordance with such inspection. The ties in question were placed by ppellee on said right of way under said contract. Appellee testifies on this subject as follows:

"I knew Burkitt & Barnes had a contract with the railroad company to deliver them crossties. I knew what their specifications were, and I agreed to deliver them the same class of ties. We were to settle by the railroad company's inspection. When I had those ties made it was contemplated that Burkitt & Barnes should have them, and I put them on the right of way of the railroad company for them, contemplating letting them have them under their contract. I suppose the whole of the gist of this controversy is that the inspection was not such an inspection

as I thought the ties ought to have had, and not any difference with reference to the number of ties. The whole gist of this controversy is on the inspection. The ties were not delivered on the right of way a great while before the bills of sale were executed for them. They were delivered there about the time the bills of sale were executed for them and a short time before. I had some ties there that I had never drawn anything against. I think I had fifteen hundred or two thousand ties that I had never drawn anything against. I do not know exactly how many. I would write to Burkitt & Barnes the number I had out, and they would send me the money and a bill of sale to sign, which was signed up and the money accepted by me."

He further testifies that if the inspection made by the railroad company's agent was a fair inspection and classification of the ties, that at the time the ties in question were delivered by Burkitt & Barnes to the railroad company he had been paid by Burkitt & Barnes $181 in excess of the amount due for said ties under his contract with them. Appellee, before the ties in question were delivered to the railroad company, had executed bills of sale to Burkitt & Barnes for about 10,000 of these ties which he represented to be first class or specification ties, and had received the full purchase price for same, but he testifies that said bills of sale were not executed by him for the purpose of conveying to Burkitt & Barnes the title to the ties, but only to secure them in the money advanced to him on his contract.

The ties were inspected and classed by an inspector appointed by the railroad company several months before they were delivered to the railroad by Burkitt & Barnes. Appellee was not present when the inspection was made, but had a representative present who made no objection to the classification of the ties made by the railroad inspector. There is no evidence in the record showing or tending to show that the inspector was fraudulent, unfair, or capricious, or that said ties were not classed in strict accordance with the specifications contained in the contract. Appellee does not say in his testimony that the ties were not inspected and classed in accordance with his contract, but claims that in filling previous tie contracts with the railroad company he had not been held to a strict compliance with the specifications of his contract, and he did not think he should be so held under this contract, and he was unwilling to deliver the ties under said inspection. A few days after the inspection appellee informed the railroad company that he was dissatisfied with the inspection, and notified it that the ties belonged to him and that the company must not take them. Burkitt & Barnes claimed that the ties belonged to them and insisted that the railroad company accept same under its contract with them, which it finally agreed to do upon Burkitt & Barnes warranting the title. Under the inspection of the ties upon which they were received by the railroad company, 4059 were classed as "culled" or second-class ties, and appellee only received therefor under his contract with Burkitt & Barnes 8 cents apiece, while he claims that said ties were first class and that he should have been

paid 24 cents apiece therefor. He recovered judgment for the difference between the value of said 4059 ties at 24 cents each and the amount paid him for same by Burkitt & Barnes.

Appellant's first assignment of error is as follows: "The court erred in refusing to give to the jury special charge number 1, containing peremptory instruction that plaintiff Ogburn was not entitled to recover in this case. It was error to refuse this charge, because the undisputed facts showed that Ogburn had manufactured the ties in controversy for Burkitt & Barnes under a contract whereby he was to abide the railroad company's inspection; they were delivered under this contract, inspected and accepted under it, his representative being present and making no objection, and under the terms of the contract title to the ties passed to Burkitt & Barnes, and his right to recover under his pleadings for conversion was wholly without facts to support it. And further, because the undisputed facts showed that he had sold and delivered the ties in question to Burkitt & Barnes long before they were taken under their contract, and had received full payment for same, or at least part payment, and title had passed to Burkitt & Barnes, with the right to sell to this defendant, and this defendant was not liable to Ogburn, which was shown by the undisputed facts. And further, because the undisputed facts showed that the inspection in question was fair and just, and not capricious, and that in accordance with his contract he had been fully paid for all the ties, and he was not entitled to recover against either defendant, all of which appeared from the undisputed facts."

We are of opinion that, irrespective of the question as to whether or not the bills of sale from appellee to Burkitt & Barnes were intended to operate only as mortgages, the undisputed facts in this case show that the ties in question had been sold by appellee to Burkitt & Barnes, and the title to same vested in them prior to the delivery of said ties by Burkitt & Barnes to the railroad company. The ties in question had been manufactured by appellee for Burkitt & Barnes, and had been delivered by him at the place designated in the contract. Appellee testified that he put them on the right of way of the railroad company for Burkitt & Barnes. The property intended to be sold was thus clearly designated, and nothing remained to be done to complete the contract of sale except the inspection and classification of the ties in order to ascertain the amount to be paid for them. Appellee was notified when this inspection would be made, and sent his nephew to represent him and see that the inspection was fair. When this inspection was made and the ties classified in accordance therewith, the contract of sale was complete and the title to the ties vested in Burkitt & Barnes, such inspection not having been shown to be fraudulent or capricious. We think it clear that Burkitt & Barnes were bound to accept and pay for these ties in accordance with their contract, and had they refused to have done so, appellee could have recovered the contract price for same as for goods sold and delivered. If the ties had been stolen or destroyed after the inspection, the loss, as between appellee and Burkitt & Barnes, would

have fallen upon the latter as the risk had passed to them. Cleveland v. Williams, 29 Texas, 204; Benj. on Sales, secs. 311-329; Tufts v. Lawrence, 77 Texas, 529.

If the title to the ties was in Burkitt & Barnes at the time they were delivered to and received by the railroad company, appellee's notice to the company of his claim to the ties and his forbidding said company to receive them would not make the act of the company in receiving the ties wrongful, and his right as against the company must be measured by his right against Burkitt & Barnes. It being clear that he would not be entitled to recover against Burkitt & Barnes for a conversion of the ties, it is equally clear that he can not recover against the railroad, unless he can show that the inspection was fraudulent. Appellee does not contend otherwise, but insists that the title to the ties had not passed to Burkitt & Barnes because there had been no delivery; and that while the contract of sale was binding upon appellee, the fact that he breached the contract in refusing to deliver the ties as he had agreed to do would not have the effect to vest the title to the property in Burkitt & Barnes. It is not necessary in order to complete the sale of goods that they be delivered to the buyer, but the title passes when the goods are designated and identified and ready for delivery in accordance with the contract of sale, and in such case the buyer can tender the purchase price and recover the goods. Cleveland v. Williams, supra. The purchase price in this case having been paid by Burkitt & Barnes, and the ties inspected as provided in the contract, the title to said ties had vested absolutely in them, and they had the right to take possession of them on the railroad right of way where they had been placed by appellee under his contract to deliver them to the railroad company, and, it follows that the railroad company committed no wrong in receiving and using said ties.

The court below erred in not instructing the jury to find a verdict for the appellants. The undisputed evidence in the case showing that the ties in question were the property of Burkitt & Barnes, at the time they were delivered by them to the railroad company, appellee can not maintain a suit for the conversion of said ties. The judgment of the court below will be reversed and judgment here rendered in favor of appellants.

*Reversed and rendered.*