

# THE ATTORNEY GENERAL
## OF TEXAS

440

AUSTIN 11, TEXAS

ICE DANIEL
ORNEY GENERAL

June 23, 1952

Hon. J. R. Alamia                     Opinion No. V-1472
Criminal District Attorney
Hidalgo County                        Re: Procedure for nomina-
Edinburg, Texas                           tion of sheriff where
                                          unopposed candidate
                                          dies before primary and
                                          before assessment is
Dear Sir:                                 paid.

     Your request for an opinion is based on the following facts:

     W. R. Doan, Sheriff of Hidalgo County, unopposed as candidate for re-election, died on June 17, 1952. He had regularly filed as a candidate in the Democratic primary to be held on July 26 of this year. The Hidalgo County Democratic Executive Committee set the filing fees for the candidates in that election on June 16, 1952, as it was required to do under Section 186 of the Election Code. On the evening of June 16, Mr. Doan authorized and directed his chief deputy to pay his filing fee. Mr. Doan died at 7:20 A.M. on June 17. No filing fee has yet been paid by Mr. Doan or anyone else for the office of Sheriff of Hidalgo County.

     Section 186 of the Election Code provides that assessments made by the county executive committee for this year's primary must be paid on or before June 21, 1952. Section 193 provides that no person's name shall be placed on the ballot who has not paid the amount assessed against him. The official ballot for the primary will be made up on June 23, 1952, according to Section 192.

     Based on these facts, you ask the following questions:

     1. Can anyone legally pay the filing fee of W. R. Doan?

     2. Should the name of W. R. Doan be placed upon the ballot as a candidate for sheriff at the Democratic primary if someone pays his filing fee?

     3. If the filing fee should not be paid, can the name of W. R. Doan be placed on the ballot?

4. If his name is placed on the ballot and if he should receive a majority of the votes, what procedure should be followed in designating the Democratic nominee in the general election?

Sections 186 and 193 of the Election Code do not specifically state that the assessment against a candidate for his · share of the primary expenses must be paid by him personally. Section 186 provides that the county executive committee

"shall, by resolution, direct the chairman to immediately mail to each person whose name has been requested to be placed on the official ballot a statement of the amount of such expenses so apportioned to him, with the request that he pay the same to the county chairman on or before the Saturday before the fourth Monday in June thereafter. It shall be sufficient to meet the requirements of this law to mail by registered letter to the chairman before the deadline herein provided, as shown by the postmark on the letter, a money order, a certified check, or a good personal check."

Section 193 reads:

"No person's name shall be placed on the ballot of a district, county or precinct office who has not paid to the county executive committee, the amount of the estimated expense of holding such primary apportioned to him by the county executive committee as hereinbefore provided. . . ."

We do not think the language of either of these sections requires personal payment by the candidate himself. It may be noted that Section 190 of the Election Code permits others to file the request, on behalf of a candidate, for a place on the ballot. So it would not be contrary to the general scheme of these filing provisions to allow payment of the candidate's filing fee by someone else. However, in this connection the provisions of the Election Code relating to campaign expenditures must also be considered. Section 239 reads, in part:

"No candidate, campaign manager, nor assistant campaign manager shall by himself or by any other person, directly or indirectly, make or authorize any other person to make any campaign expenditure except for the following purposes only, to wit:

" . . .

"b. The payment of fees or charges for plac-
ing the name of the candidate upon the primary bal-
lot, and for holding and making returns of the elec-
tion."

It is seen from this provision that the assessment
for having the candidate's name placed on the primary bal-
lot is classified as a campaign expenditure. Clearly, the
payment of the assessment could be made either by the can-
didate himself or by a campaign manager who had been ap-
pointed in accordance with Section 238 of the Election Code.
It is our opinion that the assessment could also be paid by
an agent upon authorization by the candidate or the cam-
paign manager.

Under the present facts, the candidate before his
death had authorized an agent to make the payment for him.
The question presents itself, was this authorization revoked
by the death of the candidate before the payment was made?
The general rule is that the authority of an agent ceases up-
on the death of the principal; and this would seem to be the
rule even though the agency is for the performance of a
specific act. Cleveland v. Williams, 29 Tex. 204 (1867);
Crow v. Day, 96 S.W.2d 100 (Tex. Civ. App. 1936). Under the
rule announced in these cases, we must hold that the agent
designated by Mr. Doan before his death now has no author-
ity as such to act for Mr. Doan in making this payment.

As to whether anyone other than the candidate him-
self, his campaign manager, or an agent of one of these per-
sons may pay the assessment, the answer must be found in
the provisions of Section 240 of the Election Code. Subsec-
tion (b) of this section provides:

"It shall be lawful for any person to expend
a sum which shall not in the aggregate exceed
Twenty-five Dollars ($25) for postage, or tele-
graph or telephone tolls, or for costs of any
correspondence, or any other lawful purpose
out of his own funds to aid or defeat any candi-
date, where the sum is not to be repaid to him."
(Emphasis added.)

Our understanding of this provision is that a number
of persons may join together to pay for a single item of ex-
pense so long as no one person exceeds a total of $25 for
that and all other purposes during the campaign. Since the
payment of the assessment would constitute a lawful purpose,
we think it would be lawful for the assessment to be paid in
this manner.

In your second question you ask whether Mr. Doan's name should be placed on the ballot in the primary election if someone pays his filing fee.

In adopting the Election Code, the Legislature added a new paragraph to the former statute, the new paragraph reading as follows:

> "If a candidate in the first primary dies after the deadline for filing, his name shall be printed on the primary ballot and the votes cast for him shall be counted and returned for him. If such a deceased candidate receives a majority of the votes, the proper executive committee shall choose a nominee and certify such name to the County Clerks concerned to be printed on the general election ballot. If such a deceased candidate is one of the two (2) highest candidates in that race in the first primary and if no one has a majority vote, the two (2) living candidates with the highest votes shall be certified to have their names printed on the second primary ballot."

We think your fact situation comes squarely within this provision. While a candidate's name cannot appear on the ballot unless he pays the amount of the expenses assessed to him, the status of a candidate for a county office has become fixed before the time for payment of the assessment. In other words, payment of the assessment is not a condition precedent to his being a candidate within the meaning of Section 104.

Our interpretation of this provision of Section 104 is that the death of the candidate shall not cause his name to be removed from the ballot. It does not mean that the deceased candidate's name must be placed on the ballot even though he would have been ineligible to have his name on the ballot if he had lived. We do not believe Section 104 was intended to obviate the necessity for payment of the assessment for expenses of holding the election. If the candidate had lived, his name could not have been placed on the ballot unless the assessment was paid. We are of the opinion that the fee must still be paid, after his death, if his name is to appear on the ballot. Consequently, we answer your second question "Yes"; and your third question--whether Mr. Doan's name may be placed on the ballot if the fee is not paid-- we answer "No."

In your fourth question you ask what procedure should be followed in designating the Democratic nominee in the general election, in the event Mr. Doan's name is placed on the primary ballot and he receives a majority of the votes. Section 104 states that if such deceased candidate receives a majority of the votes, the "proper executive committee shall choose a nominee and certify such name to the County Clerks concerned to be printed on the general election ballot."

Section 233 of the Election Code, which deals with nomination by an executive committee where the nominee dies after the primary, provides in part:

> " . . . the executive committee of a party, or a majority of them for the State, district or county, as the office to be nominated may require, may nominate a candidate to supply the vacancy by filing with the Secretary of State in the case of State or district officer, or with the county judge, in the case of county or precinct officer, a certificate duly signed and acknowledged by them, setting forth the cause of the vacancy, the name of the new nominee, the office for which he was nominated and when and how he was nominated."

It is our opinion that the selection of a nominee for a county office under Section 104 should be made by the county executive committee, as is provided in Section 233.

Section 233 provides that the certification is to be made to the county judge in the case of a county office, whereas Section 104 provides that the certification is to be made to the county clerk. The reason for the difference in these certification requirements for county offices is apparent when we consider them along with Section 203. That section provides that the county executive committee shall certify to the county clerk the nominees selected at the primary. Since under Section 104 the candidate's death has already occurred, if the committee so desired it could select a new nominee at the same meeting at which the election results are canvassed and certify his name along with the other nominees regularly selected at the primary. In any event the name of the new nominee should be certified to the county clerk not later than 30 days before the general election (10 days before commencement of absentee voting). See Sec. 210, Election Code; Austin v. City of Alice, 193 S.W.2d 290 (Tex. Civ. App. 1947, error ref. n.r.e.).

The committee should include in the certificate a recitation of the circumstances under which the new nominee was selected, as set out in Section 233.

## SUMMARY

Under Sec. 104, Election Code, the name of a candidate for a county office in the first primary who dies after the deadline for filing, but before the assessment of his share of the election expense is paid, should be printed on the primary ballot if the assessment is subsequently paid within the time prescribed by Sec. 186, Election Code. In such a case, the assessment may be paid by other persons in accordance with subsec. (b) of Sec. 240. If the deceased candidate becomes the party nominee, the county executive committee may name a new nominee for the general election.

Yours very truly,

APPROVED:

J. C. Davis, Jr.
County Affairs Division

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

MKW:wb:b

PRICE DANIEL
Attorney General

By *Mary K. Wall*
   Mary K. Wall
   Assistant