## L. LAZARUS LIQUOR CO. v. JULIUS KESSLER & CO.

(Circuit Court of Appeals, Sixth Circuit. December 13, 1920.)

No. 3391.

1. **Payment ⟨⟩82(4)—No recovery of excessive price paid voluntarily.**

Plaintiff, which under a contract for purchase of whisky from defendant at a stated price, to be shipped as ordered, received and paid for, without protest, successive shipments made after the additional war tax had been imposed, with knowledge that such tax was added to the contract price, *held* barred by estoppel from recovering the amount on the ground that the payments were compulsory.

2. **Sales ⟨⟩202(6)—Shipment subject to payment of draft not delivery to purchaser.**

Where a seller of whisky, although the contract contemplated delivery f. o. b. railroad, on making shipments, forwarded for collection a draft for the price of the shipment, to which it attached the bill of lading, delivery to the carrier did not vest title to the whisky in the purchaser.

3. **Corporations ⟨⟩666—Corporation held estopped to deny that contract of sale was to be performed in certain county, so that it might be sued there.**

Although a contract of sale provided for delivery of the goods f. o. b. cars at the point of shipment in another state, where the seller did not there make such delivery, but on each shipment forwarded for collection a sight draft for the price, to which it attached the bill of lading, and the purchaser paid the drafts and received delivery at point of distination, the seller is estopped to deny that the contract was to be there performed, and may be sued thereon in that county, under Civ. Code Prac. Ky., § 72.

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Action at law by the L. Lazarus Liquor Company against Julius Kessler & Co. Judgment for defendant, and plaintiff brings error. Affirmed.

J. M. York, of Catlettsburg, Ky. (J. M. York, of Catlettsburg, Ky., on the brief), for plaintiff in error.

Wm. Marshall Bullitt, of Louisville, Ky. (Levy Mayer, of Chicago, Ill., and Wm. Marshall Bullitt and Bruce & Bullitt, all of Louisville, Ky., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The Lazarus Liquor Company brought an action in the circuit court of Boyd county, Ky., against Julius Kessler & Co., to recover $4,095, money paid by it under protest to the defendant in excess of the contract price of a large amount of whisky, purchased by plaintiff from defendant, which sum of money it avers it was unjustly compelled to pay in order to secure possession of its property.

This action was later removed, by order of court, to the United States District Court, Eastern District of Kentucky, in which court an amended petition was filed. Issue was joined upon this amended petition, and upon the trial of the case, at the close of plaintiff's evi-

dence, the court on motion directed a verdict in favor of the defendant.

It appears from the record that the L. Lazarus Liquor Company, hereafter called the Lazarus Company, is a Kentucky corporation, located at Catlettsburg, Boyd county, Ky.; that Julius Kessler & Co. is a West Virginia corporation, having a place of business and a resident agent in Louisville, Jefferson county, Ky. The summons in this case was served upon this resident agent of Kessler & Co. in Jefferson county, Ky.

It further appears that on January 5, 1917, the Lazarus Company signed two written instruments. By the terms of one of these written instruments, it agreed to purchase from Kessler & Co. 1,000 cases of a certain brand of whisky, at a price named therein. This written instrument contained the further provision: "Send us contract to this effect. Subject to the approval of your home office." By the terms of the other written instrument, the Lazarus Company agreed to purchase from Kessler & Co. 300 cases of another brand of whisky, at a price named therein, which written instrument contained the following provision: "Subject to approval of your home office." These written instruments were signed by J. G. Leonard, a salesman of Kessler & Co., and were immediately forwarded by him to the Chicago office of that company. On the 10th day of the same month Kessler & Co. wrote and mailed at Chicago a letter directed to the Lazarus Company, Catlettsburg, Ky., accepting the order, which letter reached that company in due course of mail.

These written instruments further provided that the whisky would be shipped as ordered from time to time within one year from date thereof. On January 19, 1917, Kessler & Co. shipped to the Lazarus Company fifty cases of this whisky, which was received by the Lazarus Company, and for which it paid the price named in the contract. On July 2, 1917, Kessler & Co. wrote the Lazarus Company a letter in which it stated that Mr. Leonard had reported to it that the Lazarus Company would notify Kessler & Co. before July 15th what portion, if any, of the case goods contracted for early in January it would require, the balance to be canceled on July 15th by mutual consent; and again on July 10, 1917, Kessler & Co. wrote the following letter to the Lazarus Company:

"Owing to the changed conditions in the liquor business, we do not consider ourselves bound to hold or deliver any case goods purchased on contract for future delivery, unless the full amount is paid.

"We have, therefore, canceled the undelivered portion of your contract of last January covering 1,000 cases of Old Lewis Hunter Rye and 300 cases of Old Log Cabin."

To this letter the Lazarus Company replied under date of July 12, 1917, refusing to agree to the canceling of the contract or to the imposing of any new conditions, and demanding performance of the contract as written. To this letter Kessler & Co. sent a lengthy reply under date of July 13, 1917, calling attention to the adverse liquor legislation; that it expected to be out of business in 30 or 60 days; that it could not perform, and ought not to be expected to perform, this contract. The last paragraph of this letter is as follows:

"We repeat that this contract must be terminated, and you will either take the goods now and pay for them or delivery cannot be made. Under present conditions we cannot advance any moneys and it will be necessary for you to send us at least the amount of internal revenue involved in the tax payment of sufficient goods to take care of your order."

It does not appear that the Lazarus Company replied to this letter, but on July 23d it sent Kessler & Co. an order for 600 cases and New York exchange for $2,000 to cover the amount of internal revenue tax on the quantity of liquor ordered, and directed Kessler & Co. to draw on it for the balance. This shipment was made pursuant to order, credit given for $2,000 advance payment, and a draft forwarded upon the Lazarus Company for the balance of the contract price, which draft was paid.

On August 22d, Kessler & Co. wrote the Lazarus Company, calling attention to the fact that there were still 275 cases of Old Log Cabin and 375 cases of Old Lewis Hunter, 650 cases in all, yet undelivered and covered by the contract, and further said:

"We have stated to you in previous letters that we consider this contract canceled, but, to again show our good intent, we now tender you these goods for immediate bottling and shipment. In other words, we are ready to deliver to you the 650 cases providing your order is received at once and you send remittance at the rate of $3.30 a case for tax with the order. This offer is made to you for immediate acceptance only, and we do not consider ourselves bound to deliver you any more goods unless you place the order for bottling with us by return mail."

The Lazarus Company did not reply to this letter, but on September 29, 1917, it wrote to Kessler & Co., inclosing a check for $2,145 "to cover the balance of order of Lewis Hunter and Log Cabin as per our contract," and ordered 650 cases shipped at once in carload lot. In this letter it requested to have all Lewis Hunter and no Log Cabin, but, if that was not satisfactory to Kessler & Co., then to ship the balance due on the contract for Log Cabin and the balance due on the contract for Lewis Hunter, specifying the amounts of each still due it under the contract.

On October 1st, Kessler & Co. replied to this letter, acknowledging receipt of the $2,145, refusing to exchange the Lewis Hunter for Log Cabin, and further stating:

"Neither can we bottle these goods before the new tax goes into effect, which is liable to happen at any moment within the next two or three days. * * * We will bottle these 650 cases as soon as we can. Under the new tax, which will be $3.20, it will require $6.30 a case additional for tax, which on 650 cases amounts to $4,095 more. Please let us know whether to proceed with the bottling of the 650 cases under these conditions, and if so please send us additional remittance for $4,095. As soon after receipt of this remittance as possible we will bottle these goods for you and then draw on you for the balance due."

To this letter Lazarus Company replied under date of October 15th:

"Please cancel the car order for the 650 cases that we sent you on the 29th ult., and kindly send us instead 218 cases of Old Lewis Hunter, all quarts, by local freight shipment and you will mail us your check for the remainder of the $2,145 after deducting the tax for the above shipment."

On October 19, 1917, Kessler & Co., in pursuance of this order, shipped 218 cases, and credited the remittance of $2,145 forwarded upon September 29th on the purchase price, including war tax. The invoice of this shipment forwarded to the Lazarus Company showed a charge in addition to the contract price of $6.30 per case to cover "additional internal revenue tax," amounting to $1,373.40 in the aggregate, which with the contract price of $1,635 amounted to $3,008.40, leaving a balance of $863.40, for which amount a draft with bill of lading attached was forwarded. This draft was paid by the Lazarus Company.

On December 1, 1917, the Lazarus Company wrote Kessler & Co., inclosing check for $1,747.20, with order for 182 cases, "being a part of the order yet due us on our contract heretofore made with you," and advising that there were still 250 cases of whisky yet to be shipped after this 182 cases. Kessler & Co. shipped these 182 cases, applied the $1,747.20 as a credit upon the purchase price, and forwarded with the shipment a draft with bill of lading attached for the balance thereof, amounting to $866.40. In the invoice accompanying this shipment the additional internal revenue of $6.30 per case was charged as a part of the purchase price. Lazarus Company paid the draft and received the shipment. On December 21, 1917, Lazarus Company forwarded $2,500, "per your request," in advance, with an order for 250 cases. This number of cases was shipped by Kessler & Co. and a draft with bill of lading attached was forwarded. The invoice, contained in the letter advising shipment had been made, charged as part of the purchase price the additional war tax of $6.30 per case, amounting to $1,575, aggregating $3,630, upon which amount it credited the $2,500 and forwarded draft with bill of lading attached for $1,130 balance, which draft was paid by the Lazarus Company. This completed the shipment of 1,300 cases covered by the contracts.

[1] Upon these undisputed facts the plaintiff seeks to recover from Kessler & Co. the amount paid by it covering the increase in the internal revenue tax of $2.10 a gallon, which was imposed by the act of Congress of October 4, 1917, on the 650 cases taken out after that tax went into effect, which amount it claims was paid under compulsion and in order to secure possession of its property unlawfully withheld from it by Kessler & Co. until such payment was made. The answer of the defendant recites the history of the different transactions and denies the plaintiff's right to recover any money paid by it on account thereof, for the reasons that said payments were made with the full knowledge that said war tax was being paid by it in accordance with Kessler & Co.'s construction of the contract; that all of said payments were voluntary, and without protest, and without any duress or compulsion; that by reason of such payments Kessler & Co. was induced to withdraw this whisky from bond and become liable to the United States government for the amount of these taxes, and that the plaintiff by its conduct misled Kessler & Co. to its prejudice in that respect. By amended answer it avers that at the time of the making of the contract there existed a custom and usage in the whisky trade in the United States, known to all persons engaged in the whisky business,

and known to the plaintiff and defendant herein, that in sales or contracts for sales of whisky at a price which included the internal revenue tax then in effect, if there were any reduction in said internal revenue tax thereafter before delivery of the whisky the purchase price would be reduced by the amount of such reduction in tax, and in the event of an increase in such tax the purchaser would pay such increased tax to the distiller and seller; that such custom and usage was a part of the contract between plaintiff and defendant herein as if written in full therein. It also denies the jurisdiction of the circuit court of Boyd county, Ky., over the person of this defendant, or that it acquired any such jurisdiction by reason of the serving of summons upon its resident agent in Jefferson county, Ky., for the reason that the contract was not made in Boyd county and was not to be performed therein.

In the determination of the question presented by this record, it is unnecessary to review this evidence in detail. The facts above stated are fully established by the uncontradicted evidence, and the conclusion necessary to be drawn from these facts is that Kessler & Co. on October 1, 1917, repudiated this contract and absolutely and emphatically refused to make any further shipments unless the Lazarus Company would pay this additional tax imposed by the act of Congress of October 4, 1917, and further required, before making any shipment whatever, that the Lazarus Company should pay, not only this additional tax, but also the revenue tax in force at the time the contract was made; and it further required, in direct violation of the terms of the contract, that the Lazarus Company should pay the balance of the purchase price of each shipment before any deliveries were made to it whatever, and to this end it forwarded with each shipment draft with bill of lading attached.

If the first shipment made by Kessler & Co., after the dispute had arisen, were the only one under consideration here, there would be force in the contention of the plaintiff that it had not consented to or acquiesced in this additional charge and had not voluntarily made such payment. Before that shipment was made it apparently acquiesced in the demand of Kessler & Co., and forwarded to it a check for $2,145, to be applied upon the internal revenue tax in force at the time this order for shipment was given. But no presumption arises from this payment that it intended to acquiesce in the defendant's demand that it should pay the additional tax. However, when the defendant notified plaintiff that it could not make the shipment before the additional tax attached, it then canceled the larger order and gave a smaller one, still insisting, however, that the remainder of this payment "after deducting the tax for the above shipment, should be returned to it."

Kessler & Co. could not by any strong-arm methods credit that payment to any other purpose than as directed by plaintiff in its letter of October 15th; but when the defendant refused to do this, and forwarded its draft with bill of lading attached for the balance of the purchase price, including the additional tax, and also forwarded an invoice showing that this tax had been charged as a part of the purchase price, it then became the duty of the Lazarus Company, if it

desired or intended to repudiate defendant's terms, to reject this invoice and demand the return of the money that it had evidently paid in good faith, relying upon the terms of its contract with the defendant. This it did not do, but it continued from time to time to send further orders, and make further advance payments, and pay drafts with bill of lading attached, and receive further invoices including this additional tax, without any protest of any kind or character whatever. The plaintiff, therefore, cannot recover upon the theory that payment by it of the money demanded by Kessler & Co. was compulsory and made under protest. Flower v. Lance, 59 N. Y. 603; Regan v. Baldwin, 126 Mass. 485, 30 Am. Rep. 689; Aultman & Taylor Co. v. Mead, 109 Ky. 583, 68 S. W. 294; Railroad Co. v. Commissioners, 98 U. S. 541, 25 L. Ed. 196.

[2] The further claim that it made these payments for the purpose of securing possession of its own property wrongfully withheld from it is not tenable. While the contract is silent in that respect, yet, undoubtedly, it contemplated the delivery of this whisky f. o. b. cars at point of shipment. That the parties so construed it is evidenced by the first shipments made under this contract, about which there is no dispute; but later Kessler & Co. refused to make any such shipments, but forwarded draft with bill of lading attached for all of the 650 cases, and this was acquiesced in by plaintiff. This was not such an unconditional delivery to the carrier as would transfer title to the purchaser before the acceptance and payment of the draft and the delivery of the bill of lading to it. United States v. R. P. Andrews & Co., 207 U. S. 229, 28 Sup. Ct. 100, 52 L. Ed. 185; Bergeman v. Railway Co., 104 Mo. 77, 15 S. W. 992; Emery & Sons v. Irving Nat. Bank, 25 Ohio St. 360, 18 Am. Rep. 299. Brick Co. v. Machinery Co., 89 Ohio St. 366, 106 N. E. 33, L. R. A. 1915B, 536.

Under no phase of the evidence, however, could the claim of the Lazarus Company that it had paid under protest and compulsion, and for the purpose of securing possession of its own property wrongfully withheld from it, apply to the payment of the $2,500 forwarded by it to the defendant on the 21st of December, 1917, when shipment of the remaining 250 cases was ordered. At that time it had already paid to Kessler & Co. almost $500 more than the full amount of the contract price for the entire 1,300 cases; that is to say, it had paid for the 1,050 cases already received by it, not only the full price it had agreed to pay, but had paid in addition thereto $2,520 increased revenue tax demanded by the defendant. The contract price of the 250 cases constituting the final order amounted to $2,055, so that the Lazarus Company was on the 21st of December, 1917, entitled, under the terms of the original contract, to this last shipment of 250 cases without the payment of any further sum or amount whatever, and in addition thereto it was entitled under the terms of the original contract to the return to it of about $465, but with full knowledge of these facts it sent with this order for 250 cases a remittance of $2,500. Clearly this $2,500 was not paid under compulsion, fraud, or mistake of fact, nor by any stretch of the imagination could it be said to have been paid for the purpose of securing possession of its own property

wrongfully withheld from it by the defendant, for at that time the whisky was not even bottled or withdrawn from the bonded warehouse. So that it did not, and could not, have had any property interest therein whatever. It is also equally clear that this payment was not made under protest of any kind or character, but beyond all question was a voluntary unconditional payment. This is equally true of the further payment of $1,130 made by the Lazarus Company to cover the balance of the purchase price of this shipment, the invoice of which, on its face, included this additional tax.

When Kessler & Co. first repudiated its contract and refused to make further shipments, except upon price, terms, and conditions entirely different from the price, terms, and conditions written in the contract, the courts were open to the Lazarus Company, and undoubtedly they would have fully protected it in its legal rights, and have afforded it a full and adequate remedy for this breach of contract on the part of Kessler & Co.; but the defendant was not then ready to invoke the aid of a court. Its course of conduct from that time on indicates either that it had receded from the position it had taken in its letter of July 12th, and had concluded to accept the construction placed upon this contract by Kessler & Co. that it should pay the additional tax, or that, in its eagerness to secure speedy shipment of the balance of the whisky covered by the contract, it pretended to acquiesce in these demands as an inducement to the defendant to make such shipments; but no matter what may have been the secret intent and purpose of the Lazarus Company when it complied with these demands, the courts are now powerless to afford it the relief to which it was entitled when Kessler & Co. repudiated this contract and made these demands as a condition precedent to further shipments.

[3] Under section 72 of the Kentucky Code, an action against a corporation upon a contract must be brought in the county in which such corporation has an office or place of business or where its agent resides, or in the county in which the contract is made or is to be performed. The plaintiff in its letter of July 21st refers to it as the contract "of January 10, 1917, as confirmed by you at this date referred to." It is clear that this was not a completed contract until the letter of Kessler & Co. was mailed in Chicago to the plaintiff; therefore the contract was not made in Boyd county, Ky. Baird et al. v. Pratt et al., 148 Fed. 825, 78 C. C. A. 515, 10 L. R. A. (N. S.) 1116 (C. C. A. 8).

No matter what may have been the original intention of the parties as to the places of performance, Kessler & Co., in view of the fact that it forwarded with each shipment of goods a sight draft with bill of lading attached, is in no position now to claim that the contract was not to be performed in Boyd county. There is where, under its construction of the contract, it did deliver these 650 cases, and this performance on the part of defendant at Catlettsburg, Boyd county, Ky., was accepted by the Lazarus Company without protest or complaint that the contract originally contemplated performance by delivering this merchandise f. o. b. cars at point of shipment.

This court is therefore of the opinion that Kessler & Co. is estopped

to deny that this contract was a contract to be performed in Boyd couny, Ky., and that, therefore, this action was properly commenced in that county; but nevertheless, for the reasons above stated, the court properly directed a verdict for the defendant.

The judgment of the District Court is affirmed.