E. A. Marcus et al. v. L. E. Armer.

No. 4259. Decided April 18, 1928.
(5 S. W., 2d Series, 960).

*White, Wilcox & Taylor, J. Harris Gardner,* and *Black & Graves,* for appellants. An oral contract of sale to be completed by loading and delivering the goods to the carrier for shipment to the buyer is not changed to that of a written contract to be performed at the point of destination by the mere circumstance that the shipment is made under the form of bill of lading commonly known as "shipper's order, notify, with draft attached." Gulf, etc., Ry. Co. v. Browne, 66 S. W., 341 (writ of error denied); Sanders v. Hester Cotton Co., 195 S. W., 269; Gottlieb v. Dismukes, 230 S. W., 792; S. W. Grain & Seed Co. v. Blumberg, 162 S. W., 1 (writ of error denied, 165 S. W., 15); Gottlieb v. Ainsworth, 229 S. W., 341; Watson v. Howe Grain & Mercantile Co., 214 S. W., 843; Jordan v. West Texas Gin Co., 242 S. W., 542; Marcus v. Armer, 253 S. W., 588; Todd v. Jamar Seed Co., 252 S. W., 256.

How is it possible to get out of this bill of lading and draft a contract on the part of appellants to deliver cottonseed of any specific quality or germinating strength, at Austin? The alleged contract for the delivery of cottonseed having ninety-eight per cent germination quality rests wholly in parol. The bill of lading, as shown in the statement of facts, makes no reference to the quality of the seed. Valdespino v. Dorrance, 207 S. W., 649.

*Garrett, Brownlee & Goldsmith,* for appellee. The appellants, having loaded the seed at Bertram and procured from the railroad a "shipper's order" bill of lading for the seed, consigned to "shipper's order destination Austin, Texas, notify" appellee, endorsed the bill of lading and attached thereto a draft drawn by them on appellee for the price of the seed and sent the bill of lading and draft to the Austin National Bank with instructions to deliver the bill of lading to appellee on payment of the draft at Austin, which draft had to be paid and the bill of lading obtained from the bank before the car of seed could be delivered to him, the appellants thereby obligated themselves in writing to make delivery of the seed represented by the bill of lading at Austin, Texas, and the court properly overruled the appellants' plea of privilege.

It has been uniformly held by our courts in every case where the seller agreed to ship property to a particular county and ships the same by "Shipper's order" bill of lading, consigned to "Shipper's order" and the bill of lading showing the destination as agreed on is

endorsed and attached to a draft for the price drawn on the buyer, to be paid at the buyer's residence, and bill of lading to be there delivered on payment of draft, that by such transaction the seller obligated himself in writing to deliver to the buyer at the place of destination named in his written order bill of lading. Malloy v. Industrial Cotton Oil Properties, 238 S. W., 984; Pitman v. Sanders, 234 S. W., 412; Landa v. Ainsa, 231 S. W., 175; Peoples Ice Co. v. Interstate Cotton Co., 182 S. W., 1163; Harris v. Salvato, 175 S. W., 802; Keller v. Mangum, 161 S. W., 20, and other cases.

Mr. Justice GREENWOOD delivered the opinion of the court.

Certified question from the Court of Civil Appeals of the Fourth Supreme Judicial District of Texas.

The Honorable Court of Civil Appeals makes the following statement and propounds the following question to this court, to-wit:

"This appeal is from an order made by the District Court of Travis County overruling a plea of privilege filed by E. A. Marcus and another to be sued in Burnet County, in which they reside.

"The suit was for damages for breach of contract in which appellant Marcus, a resident of Burnet County, is alleged to have obligated himself to sell and deliver twenty-five tons of cottonseed to appellee Armer in Travis County. It was alleged that Armer purchased the seed by sample, which tested '95 per cent germination,' whereas, the seed actually delivered to him tested only '48 per cent germination.' It was alleged that this contract was performable by Marcus in Travis County, and that venue of the suit against him lay in that county by virtue of the exception embraced in Subd. 5, Art. 1830, the general venue statute.

"The terms of the contract of purchase and sale, none of which were in writing, are thus stated by the court below:

" 'The court is further of the opinion, and finds from the evidence that the plaintiff about the time alleged (December 1, 1919) was in Bertram, Burnet County, Texas, and purchased orally from the defendants a car load of cotton planting seed at the price of $112.50 per ton and deposited one hundred dollars on the purchase price; that the plaintiff wanted the cotton seed sacked and it was understood between the parties either at that time or later that the plaintiff was to furnish the sacks and pay for the labor of putting the seed in the sacks and defendants were to load the sacked seed in the car and the plaintiff was to pay the freight on the seed from Bertram, it being understood between the parties that the plaintiff would later

notify the defendants the place where the car of seed was to be shipped. * * *'

"The court finds that in pursuance of this oral contract the parties performed, as follows:

" 'That during the latter part of January, 1920, the plaintiff notified the defendants to ship the seed to Austin, Travis County, Texas, and that on or about the 14th day of February, 1920, the defendants, having loaded the sacked seed in the car at Bertram, procured from the railroad company at Bertram a "Shipper's Order" bill of lading covering the car consigned "to shipper's order, notify M. Armer, Austin, Texas," and the defendants drew a draft on the plaintiff for the price of the seed, less one hundred dollars theretofore deposited, and endorsed said bill of lading and draft to the plaintiff upon his paying the amount stated in the draft, and that plaintiff paid the draft, got the bill of lading from the bank and presented same to the railway company at Austin and paid the freight charges and the car of seed was delivered to him.'

"And concludes as a matter of law:

" 'The court further finds that by causing said car of cotton seed to be shipped in the manner above stated the defendants became obligated upon a contract in writing, to-wit, the bill of lading and draft above referred to, performable in Travis County, Texas, and that said suit therefore falls within exception or subdivision 5 of the venue statute.'

"It is contended that although the contract for the purchase and sale of the cotton seed was made orally, and not in writing, the subsequent act of the seller, in consigning the seed to Armer on an 'order' bill of lading, and forwarding this bill of lading, with sight draft attached, through banks, to Armer at Austin, constituted a written obligation on the part of the seller to deliver the seed in Travis County; that this act converted the original oral contract into one in writing, performable by the seller in Travis County, whereby the transaction was brought within the purview of said Subd. 5.

"Upon the recommendation of the Commission of Appeals your Honorable Court has issued its writ of mandamus requiring this Court to certify the question involved, and in obedience to said writ we respectfully certify to your Honors for decision the following question:

"Did the trial court err in overruling the plea of privilege under the facts as alleged and proven?"

Under the original oral contract, the sellers' obligations were to be performed at Bertram in Burnet County. Under the contract the buyer was bound to pay the purchase price, less his deposit, in cash. Upon the specific seed contracted for being put aside in a deliverable state and the balance of the purchase price being paid, the property in the seed would have passed at Bertram to the buyer. Cleveland v. Williams, 29 Texas, 209, 94 Am. Dec., 274; Owens v. Clark, 78 Texas, 551, 15 S. W., 101. Any breach of the contract by the sellers, such as that arising from inferior quality of the goods shipped, would have arisen at Bertram. However, the parties had a perfect right, if they so desired, to change the original contract, and to provide for the cotton seed to be shipped from Bertram in advance of the payment of the full purchase price, and to bind the sellers to deliver the seed at Austin upon payment there of the balance of the purchase money.

While the question is one involved in much confusion of thought, we have concluded that we conform to the real intention of the parties when we construe the shippers' order bill of lading and attached sight draft, in this case, as an offer in writing by the sellers, accepted by the buyer, modifying the original verbal agreement so as to make Austin the place of delivery of the cotton seed, and so as to prevent the title to the seed from passing to the buyer until payment of the draft.

We regard as unassailable the following conclusions of Mr. Benjamin:

"If A. in New York orders goods from B. in Liverpool without sending the money for them, B. may execute the order in one of two modes without assuming risk. B. may take the bill of lading, making the goods deliverable to his own order, or that of his agent in New York, and send it to his agent, with instructions not to transfer it to A. except on payment for the goods. Or B. may draw a bill of exchange for the price of the goods on A., and sell the bill to a Liverpool banker, transferring to the banker the bill of lading for the goods, to be delivered to A. on due payment of the bill of exchange. Now in both these modes of doing business, it is impossible to infer that B. had the least idea of passing the property to A. at the time of appropriating the goods to the contract. So that, although he may write to A., and specify the packages and marks identifying the goods, and although he may accompany this with an invoice, stating that these specific goods are shipped for A.'s account, and in accordance with A.'s order, making his election final and

determinate, the property in the goods will nevertheless remain in B. till the bill of lading has been endorsed and delivered up to A." Benjamin on Sales (6th Ed.), pp. 420, 421.

Professor Williston says:

"It follows from what has been said that if the seller takes a bill of lading in which he is named as consignee as well as consignor, the carrier is a bailee for the seller, not the buyer, and the title is retained. The practice of taking bills of lading in this form has been common for centuries in order to preserve to the seller a hold upon the goods during transit, and many cases have sustained the validity of this retention of title. This principle is applicable even though the goods are shipped on the buyer's vessel, for the captain having authority to sign bills of lading by so doing constitutes himself as an independent bailee of the goods for the shipper. It is commonly said that the seller by taking the bill of lading in his own name reserves the jus disponendi or right of disposal of the goods, and the latter expression is used in the section of the English Sale of Goods Act corresponding to that here under discussion. There seems no doubt that the seller who thus consigns the goods to himself has complete control over them, and that the so-called jus disponendi is in fact title. The seller may not only retain the goods until the buyer performs his obligation under the contract, but may, even in violation of the contract, dispose of them to third persons. If the seller does this, of course he is liable in damages to the buyer, but the second purchaser from the seller acquires an indefeasible right." 1 Williston on Sales (2d Ed.), Sec. 283, pp. 637, 638.

The basis for the rule is pointed out by Professor Williston in saying:

"The theory of merchants upon which the law proceeds is perfectly simple. If a shipper consigns goods to another specified person, it indicates an intention to deliver them to the ship captain as bailee for the person named, and unless some rule of law prevents, the property thereupon vests in the person so named. The same result follows if, after goods have been shipped without a named consignee, the carrier, at the consignor's request, agrees to deliver to a specified person. On the other hand, if the shipper directs the carrier to redeliver the goods at their destination to the shipper himself, or to his order, it indicates an intention that the ship captain shall be the bailee for the shipper and the property will remain in the latter. Modern cases recognize this doctrine to the fullest extent." 1 Williston on Sales (2d Ed.), Sec. 282, pp. 634, 635.

In harmony with the rule laid down by Benjamin and Williston is the opinion of this Court in Lang v. Rickmers, 70 Texas, 110; 7 S. W., 527, approved in Hall & Brown Machine Company v. Brown, 82 Texas, 472; 17 S. W., 715, and in Victor Safe & Lock Co. v. Texas State Trust Co., 101 Texas, 98; 104 S. W., 1040. In the opinion in Lang v. Rickmers, Judge Stayton said:

"When the contract of sale is that the goods sold shall be paid for with cash, or notes executed by the vendee or a third person, the sale is on condition that the payment be made, and until this is done the title to the goods remains in the vendor, notwithstanding they may have come into the possession of the vendee, unless it appears that they were delivered to the purchaser with intent to waive the condition of payment."

The very question here certified was before the Galveston Court of Civil Appeals in the case of Seley v. Williams, 20, Texas Civ. App., 406; 50 S. W., 400. The facts disclosed that after Seley & Early had wired prices on corn to Williams, and Williams had wired for five cars of corn, Seley & Early caused the corn to be shipped by J. K. Davidson & Company from Parsons, Kansas, to Williams at Columbus, Texas, under bills of lading to shippers' order, notify Seley & Early, endorsed by J. K. Davidson & Company, which were attached to drafts by Seley & Early on Williams for the purchase price of the corn. Determining that no contract was consummated by the telegrams, the court held:

"The bills of lading and drafts, with their several indorsements, were offered by the plaintiff (Williams) in connection with each other; and, taken together, this court is of the opinion that they constitute a written contract between the parties, obligating the appellants (Seley & Early), upon payment of their several drafts, to deliver to appellee (Williams), in Columbus, Texas, the corn covered by the bills of lading."

Seley v. Williams has been repeatedly followed by the Courts of Civil Appeals. Callender v. Short, 34 Texas Civ. App., 364; 78 S. W., 367; Grayson County National Bank v. Nashville C. & St. L. Ry. Co., 79 S. W., 1094; Planters Company v. Whitesboro Cotton Oil Company, 146 S. W., 225; Keller v. Mangum, 161 S. W., 20; Harris v. Salvato, 175 S. W., 802; Peoples Ice Co. v. Interstate Cotton Oil Co., 182 S. W., 1163, wherein writ of error was denied by the Supreme Court; Pittman v. Sanders, 234 S. W., 412; Malloy v. Industrial Cotton Oil Company, 238 S. W., 984.

In Scott & Mayhall v. Lubbock Grain & Coal Company, 113 Texas, 127; 252 S. W., 164, the Supreme Court adopted an opinion of Presiding Judge McClendon of Sec. "B" of the Commission of Appeals, where it was held that when cane seed, contracted to be sold at a certain price F. O. B. point of origin, were shipped under draft on the buyer attached to a bill of lading consigning the seed to the shippers' order, with written guaranty of weight at destination, the sellers had contracted in writing to guarantee delivery at destination of the quantity of seed called for in the contract. A week later the Supreme Court adopted an opinion of Presiding Judge Gallagher of Sec. "A" of the Commisison of Appeals, in Patterson v. Smith Bros. Co., 113 Texas, 147; 252 S. W., 1058, holding that a written memorandum of the sale of oats for shipment by the seller from Hunt County to a buyer in Tarrant County, with weights and grades determinable at destination, followed by shipment on bill of lading to shipper's order, notify the purchaser, with drafts attached for the purchase price, bound the seller by a written contract to deliver the goods at destination. Judge Gallagher's opinion is based squarely on the decision in Seley v. Williams, supra, as well as on the decision in Scott & Mayhall v. Lubbock Grain & Coal Company, supra. After citing and reviewing both cases, the opinion of Judge Gallagher concludes: "The authorities above cited and reviewed furnish the proper solution of the issue presented." The opinion could not have been adopted by the Supreme Court without approval of the doctrine announced in Seley v. Williams.

We recognize the conflict between certain expressions in the opinion in Robinson & Martin v. H. & T. C. R. R. Co., 105 Texas, 187; 146 S. W., 537, and· the principles underlying Lang v. Rickmers, 70 Texas, 110; 7 S. W., 527; Hall & Brown Machine Co. v. Brown, 82 Texas, 472; 17 S. W., 715; Victor Safe & Lock Co. v. Texas State Trust Co., 101 Texas, 98; 104 S. W., 1040; Seley v. Williams, 20 Texas Civ. App., 405; 50 S. W., 400; and Patterson v. Smith Bros. Co., 113 Texas, 147; 252 S. W., 1050, but feel constrained to follow the principles underlying the cases last cited, which are in accord with the decisions of many of the most eminent American courts. Dows v. National Exchange Bank, 91 U. S., 631; Lazarus Liquor Co. v. Julius Kessler & Co., 269 Fed., 525; First National Bank of Cairo v. Crocker, 111 Mass., 167; McArthur Co. v. National Bank, 122 Mich., 226; Freeman v. Kraemer, 63 Minn., 246; Petersburg Fire Brick & Tile Co. v. American Clay Machinery

Co., 89 Ohio St., 365; L. R. A. 1915B, 540; Cragun Bros. v. Todd, 131 Iowa, 250.

The Supreme Court of Massachusetts states: "Even in the case of a contract of sale, the fact of making the bill of lading deliverable to the order of the vendor, when not rebutted by evidence to the contrary, is decisive to show his intention to preserve the jus disponendi, and to prevent the property from passing to the vendee * * *. Where, by the terms of the bill of lading, the goods are to be delivered to the consignor's order, the carrier is his agent and not the consignee's." First National Bank of Cairo v. Crocker, 111 Mass., 167, 166.

Counsel for appellants ably argue that this suit cannot be maintained in Travis County, though the consigned goods were deliverable there, because the damages sought are claimed for a difference in the quality of the seed sold and the quality of the seed delivered, and there is nothing in the written bill of lading and draft binding the sellers to deliver seed of any specific quality or with any certain germinating strength. There can be no question that the sellers intended the buyer to understand the draft and bill of lading as covering the goods contracted to be sold and delivered and not goods of inferior grade or quality. Nor can there be any reasonable doubt that the buyer understood the draft and bill of lading, at the time he paid the draft, as representing the goods contracted to be sold and worth at the contract price the amount of the draft. A writing ought certainly to be interpreted to mean what all parties to it intend and understand it to mean. So interpreting the draft and bill of lading, they evidence a written obligation on the part of the sellers to deliver the goods involved in the contract of sale in Travis County. For a breach of that obligation, suit was maintainable in Travis County, under Subd. 5 of Art. 1995 of the Revised Statutes.

We answer to the Certified Question that the trial court did not err in overruling the plea of privilege on the facts proven.