## OLIVER v. HENLEY. (No. 808.)

Court of Civil Appeals of Texas. Waco.
Oct. 17, 1929.

Rehearing Denied Nov. 14, 1929.

Ira Lawley, of Groesbeck, and James D. Buster, of Sherman, for appellant.

L. W. Shepperd, of Groesbeck, for appellee.

STANFORD, J. This suit was filed by appellee, a resident of Limestone county, Tex., against appellant, a resident of Grayson county, Tex., to recover damages, which appellee claimed he suffered by reason of a breach of a contract, by the terms of which appellant agreed to ship and deliver to appellee in Limestone county, Tex., certain cotton seed which were represented to be sound and 92 per cent. of which would germinate and grow when

planted, etc., and that he (appellee) did plant same, and that said seed were inferior, defective, and that only about 10 per cent. of same germinated or came up; that, by reason of said breach of said contract, appellee sustained damages in the sum of $572.50. Appellant filed his plea of privilege to be sued in Grayson county, the county of his residence. Appellee controverted said plea of privilege, alleging, in substance, his cause of action came under subdivision or exception 5 of our general venue statute (Rev. St. 1925, art. 1995, subd. 5), in that said contract on the part of appellant was to be performed in Limestone county, Tex. On the hearing of said plea of privilege the court overruled same, from which action of the court the appellant has duly appealed.

As we view this record, there is only one question involved, to wit: Was there a contract in writing between the parties obligating appellant to deliver the cotton seed as described in contract, to appellee in Limestone county, Tex.? The record shows the following appeared in the Semi-Weekly Farm News, Dallas, Tex., of Friday, March 2, 1928: "Farmers, Plant Mebane and Kasch. Two best varieties. Beat the weevils and insects and get top prices. Make best by test. I have both varieties. Grown last year from pedigreed seed. I will ship C. O. D. subject to inspection, and let you be the judge. My seed are machine-culled and tagged out according to your state and seed laws. $4.00 sack of 3 bushels, freight paid in Texas and Oklahoma; $4.50 in Arkansas and Louisiana. Read my ginner and bankers' recommendations below. Get the facts. Order now. J. R. Oliver, Farmer, Whitewright, Texas." Just below the above, in the same issue of said paper, follow recommendations of J. R. Oliver and the cotton seed he offered for sale by the Planters' Gin Company, also by the First National Bank, and also by the Planters' National Bank, all of Whitewright, Tex. Appellee testified that he saw the above advertisement and offer of J. R. Oliver in the Semi-Weekly Farm News of March 2, 1928, and also read same in the Farm and Ranch, of same date, and said further: "I relied on his advertisement and the statements therein, and accepted his offer and ordered eighteen bushels of seed from him at Whitewright, Texas. I sent him my order by mail and enclosed my check for $22.50 in payment of same. I received the eighteen bushels of cotton seed from the depot at Kosse, Texas, about March 15th, 1928."

Appellee testified further that he received copies in Limestone county, Tex., of both the Semi-Weekly Farm News and the Farm and Ranch; that he read the advertisement in both said papers and relied upon said statement made by J. R. Oliver; that "Mr. Oliver made no other representations to me and I never did receive a letter from him. I ordered the seed from him by mail, that is the en-velope that I sent my letter and check to him in ordering the seed. That is the letter that I wrote him ordering the seed. In response to that letter and check that I mailed to Mr. Oliver at Whitewright, he shipped to me at Kosse, Texas, freight prepaid, six sacks of cotton seed with a tag attached to each sack."

The letter above referred to is as follows:

"Thornton, Texas, March 12, 1928.

"Mr. J. R. Oliver, Whitewright, Texas Please ship me 18 bu. of your choice 1926 Mebane cotton seed. Enclosed you will find check for same, $22.50.

"Yours truly,

"Percy W. Henley."

"P. S. Please ship to Kosse, Texas.

"P. W. H."

Appellee testified further that he planted the seed at the proper time in well-prepared soil and only 10 per cent. of the seed came up, etc. Attached to each of said six sacks of cotton seed was a tag. On the front side of this tag was the following:

"3 Bushels—96 pounds

| | |
|---|---|
| Name or kind | Mebane |
| Purity (not varietal) | 99.5% |
| Inert matter | 4-10 of 1% |
| Other commercial seeds | none |
| Weed seeds | none |
| Germination average | 92% |
| Live seeds (approx.) | 92% |
| Grown in | Texas |

"Tested by Department of Agriculture of Texas on December 6, 1927. From J. R. Oliver, Producer of Improved Farm Seed and Breeder of Registered Duroc Jersey Hogs.

"Whitewright, Texas."

The following was on the reverse side of the tag:

"Percy W. Henley,
Kosse, Texas,
P. O. Thornton,
R. 4, B. 86."

Appellant testified, in part, as follows: "The advertisement you show me that is included in a copy of the Farm & Ranch, dated March 2nd, 1928, is an advertisement that I had inserted in that paper on that date. The paper is published at Dallas, Texas, and that paper has a circulation over Texas and has a circulation in Limestone County, Texas. I sent the copy for that advertisement to that paper at Dallas, Texas, to be inserted in said paper as an advertisement, offering my seed for sale * * * I received his letter and check out of the postoffice at Whitewright, Texas. I accepted the check he mailed to me as payment for the seed ordered * * * and shipped to him six sacks of cotton seed, three bushels in each sack * * * by prepaid freight from Whitewright, Texas, to him at Kosse, Texas."

While a large part of the advertisement and recommendations are intended only to portray the good qualities of appellant's pedigreed cotton seed, and appellant's good standing as an honest, reliable man, yet appellant

does offer to ship sacks of 3 bushels each, freight prepaid, to any point in Texas for $4 per sack, said sack tagged according to our state seed laws; or, at said price per sack of 3 bushels, he offered to ship same C. O. D. to any point in Texas, subject to inspection. Appellee evidently understood the notice he read to be an offer to sell, giving a full description of the seed, the price per sack of 3 bushels, duly tagged, to be shipped freight prepaid to any point in Texas. Appellant evidently understood appellee's letter of March 12, 1928, inclosing his check and instructing appellant to ship the 18 bushels to appellee at Kosse, Tex., to be an acceptance of his offer to sell, as same appeared in the papers above referred to, for appellant without any further communication, shipped the six sacks of 3 bushels each to appellee at Kosse, Tex., freight prepaid. We think the offer, as same appeared in the papers, was intended by appellant not only to get his pedigreed seed and the good qualities of same before the farmers of Texas, but also to make quick sales of same without further communication. His offer was clear, definite, and explicit, left nothing open for negotiation. Both parties, we think, understood his statement in the paper as an offer, for the price and on the terms stated, to sell and deliver the seed described, freight prepaid, to any point in Texas. Both parties acted upon and treated it as such. While the offer to sell for the price and on the terms therein stated by appellant, as the same appeared in the paper, was not addressed to appellee, but was, we think, addressed to, and intended for any one who might accept said offer, and when appellee by his letter accepted said offer, said offer as contained in the paper and appellee's letter accepting same, constituted a contract in writing, performable in Limestone county. Appellant's advertisement offered for sale seed as described therein, "made best by test," unconditionally, delivered at any point in Texas at the price stated therein. Appellee's letter was an unqualified acceptance of said offer, and the price was inclosed, leaving only the delivery of the seed described, in Limestone county, to make a completed transaction. Appellant made the delivery in Limestone county of the quantity of the seed purchased, but it is contended he breached his contract; in that he failed to deliver the quality of seed he agreed to deliver. If in this case a controversy had arisen as to the price of the seed, or as to the payment of the freight, could there be any doubt but that such controversy would be settled by reference to the offer of sale appellant admitted putting in the paper, and which was unconditionally accepted by appellee? Appellant's offer to sell for $4 per sack of 3 bushels, delivered at any point in Texas, freight prepaid, was, in effect, the same as an offer to deliver for said price f. o. b. cars at any point in Texas. If the contract had only required appellant to deliver the seed f. o. b. cars at

Whitewright, the origin of the shipment, then the case of Ferguson Seed Farms v. Ash et al. (Tex. Civ. App.) 275 S. W. 161, cited by appellant, would have been applicable, but as the contract in the instant case required appellant to deliver the seed freight prepaid at Kosse, Tex., or f. o. b. cars at Kosse, Tex., the cited case above has no application. Appellant in his offer says: "I will ship C. O. D., subject to inspection." And again, in the same connection, says: "$4.00 sacks of three bushels, freight paid in Texas and Oklahoma." Appellant's proposition was clear, that he would, for the price stated, ship to any point in Texas freight prepaid; and as to whether or not he would ship C. O. D. was dependent upon whether or not the price of the seed accompanied the acceptance of the offer. It was immaterial whether the shipment was C. O. D. or not. In either event, the obligation of appellant under his contract was to deliver the seed described to appellee in Limestone county. He did so deliver seed, but not the seed he was obligated to deliver. He breached his contract, in that he failed to deliver to appellee, in Limestone county, the seed he was obligated under his contract to deliver in said county. The delivery of the seed described, in said county, was essential to the performance of the contract. We think the contract in this case was in writing within the meaning of our venue statute, and that the same was performable in Limestone county, and the trial court was correct in overruling appellant's plea of privilege. Article 1995, subd. 5, Rev. St. 1925; Farmers' State Bank v. Sullivan (Tex. Civ. App.) 241 S. W. 727; Vowell v. Johnson (Tex. Civ. App.) 288 S. W. 1106; Ruling Case Law, vol. 6, p. 600; 13 C. J. p. 273, § 70, and cases cited. While the statute of sales has not been enacted in this state, on this point, Mr. Williston declares that it follows the common law. Section 19, rule 5 of said act is as follows: "If the contract to sell requires the seller to deliver the goods to the buyer or at a particular place, *or to pay the freight or cost of transportation to the buyer or to a particular place* (italics ours), the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

Williston on Sales, vol. 2, p. 1758; Id., vol. 1, p. 591; Allen v. Wolf River Lumber Co., 169 Wis. 253, 172 N. W. 158, 9 A. L. R. pages 271, 272. Even if the contract was to be performed to the extent only of delivery by prepaid carrier at Kosse, Tex., suit could be maintained there for any breach of the contract, whether such breach was of express or implied terms. Marcus v. Armer, 117 Tex. 368, 5 S.W.(2d) 960, 962, 60 A. L. R. 672. In Ruling Case Law, cited above, the following rule is announced: "A contract is ordinarily formed by an offer and an acceptance. In order to constitute a proposal which may be converted into a contract by acceptance, the offer need not be addressed to a particular in-

dividual. A binding obligation may even originate in an advertisement addressed to the general public. But to whomsoever it is addressed, an offer, to be binding, must be definite, although the offeror may be bound by an offer to sell which allows the offeree to determine the quantity which he will accept." See authorities cited. Practically the same rule is announced in Corpus Juris, cited above.

The judgment of the trial court is affirmed.

BARCUS, J. (dissenting). I regret that I am unable to agree with my associates in the disposition of this case. The record shows without dispute that the only communication appellee had with appellant was that appellee read and acted upon the following advertisement in the Semi-Weekly Farm News: "Farmers, Plant Mebane and Kasch. Two best varieties. Beat the weevils and insects and get top prices. Make best by test. I have both varieties. Grown last year from pedigreed seed. I will ship c. o. d. subject to inspection and let you be the judge. My seed are machine-culled and tagged out according to your State and Seed Laws. $4.00 sack of 3 bushels. Freight paid in Texas and Oklahoma. $4.50 in Arkansas and Louisiana. Read my ginner and bankers' recommendations below. Get the facts first. Order now."

After appellee read said advertisement he wrote appellant at Whitewright, Tex., the following letter: "Please ship me 18 bushels of your choice 1926 Mebane cotton seed. Enclosed you will find check for same, $22.50. Please ship to Kosse, Texas." When appellant received said letter and check, he delivered the 18 bushels of cotton seed, tagged as required by the state department of agriculture under article 1702 Criminal Statutes (Pen. Code 1925), to the freight agent, prepaid the freight, and obtained therefor a bill of lading, and the seed were shipped to appellee at Kosse, Tex.

In my opinion, appellee having paid for the cotton seed at Whitewright, and thereafter appellant having delivered same to the freight agent at Whitewright, freight prepaid, and consigned to appellee at Kosse, the title there-

to became vested in and was the property of appellee. Cleveland v. Williams, 29 Tex. 204, 94 Am. Dec. 274; Owens v. Clark, 78 Tex. 551, 15 S. W. 101; Downey v. Taylor (Tex. Civ. App.) 48 S. W. 541; Keller v. State (Tex. Cr. App.) 87 S. W. 669, 1 L. R. A. (N. S.) 489; Ehrenberg v. Guerrero (Tex. Civ. App.) 225 S. W. 86. Under the undisputed facts as testified to by appellee, appellant did everything he agreed to do, namely, ship to appellee, freight prepaid, to Kosse, Tex., 18 bushels of cotton seed, tagged as required by the state department of agriculture of this state.

I think the opinion as written is in direct conflict with the holding of the Supreme Court in Marcus v. Armer, 117 Tex. 368, 5 S.W.(2d) 960, 961, 60 A. L. R. 672, where, in answer to a certified question, the Supreme Court used this language: "Under the original oral contract, the sellers' obligations were to be performed at Bertram in Burnet county. Under the contract the buyer was bound to pay the purchase price, less his deposit, in cash. Upon the specific [cotton] seed contracted for being put aside in a deliverable state and the balance of the purchase price being paid, the property in the seed would have passed at Bertram to the buyer. Cleveland v. Williams, 29 Tex. 209, 94 Am. Dec. 274; Owens v. Clark, 78 Tex. 551, 15 S. W. 101. Any breach of the contract by the sellers, such as that arising from inferior quality of the goods shipped, would have arisen at Bertram."

As I interpret the record in this case, the act of appellee in paying appellant the full purchase price of the cotton seed at Whitewright, Tex., and appellant's setting aside the particular 18 bushels of cotton seed and tagging them according to the agreement, and paying freight to Kosse and delivering same to the transportation company, made a completed transaction in Grayson county, and fixed the venue in said county for any damage that appellee might be entitled to by reason of the cotton seed being, as said by the Supreme Court in the case above cited, "of inferior quality." Appellee's only complaint in this case is that the seed were of an inferior quality, in that they would not germinate.