## ATWOOD COTTON BREEDING FARMS v. MIDWAY FARMERS' CO-OPERATIVE SOC.

### No. 890.

Court of Civil Appeals of Texas. Eastland.

Sept. 25, 1931.

Rehearing Denied Oct. 16, 1931.

A. R. Stout, of Ennis, for appellant.

Carl Rountree and Philip Yonge, both of Lamesa, for appellee.

LESLIE, J.

The appellee, Midway Farmers' Co-operative Society of Dawson county, Tex., a corporation, plaintiff in the trial court, brought this suit against the appellant, Atwood Cotton Breeding Farms of Ellis county, Tex., a corporation, alleging in substance that, on or about February 1, 1930, appellee purchased in Dawson county, Tex., from the appellant, 600 bushels of cottonseed, and agreed to pay therefor in Lamesa, Tex., $1,410 upon delivery, freight prepaid; that the seed were understood to be for planting purposes, and were to be free from cockleburs and other foreign substance rendering them unfit for the purposes intended; that the seed were shipped to Dawson county, consignee shipper's order, notify Midway Farmers' Co-operative Society, bill of lading with draft attached for the amount of the contract price of the seed; that the appellee paid the draft in Dawson county, Tex., and there received the bill of lading, as well as the title and possession of the seed. Said draft, bill of lading, etc., carried proper indorsements and transfers from the shipper to the purchaser.

It was further alleged that the seed were to be state Certified Texas Special Field Culled Kasch cottonseed, and to conform to certain standards of quality, but that, after they were paid for and received, it was ascertained that the appellant had failed to carry out the contract and that the seed were of a quality and grade inferior to that contemplated by the contract, and therefore unfit for planting purposes, which rendered the seed worthless to the appellee and entitled it to a recovery of the purchase price, etc., of the seed, or such portions thereof as it was unable to market.

The appellant filed its plea of privilege in due form to be sued in Ellis county, where the shipment originated. This plea was controverted by the appellee, who set up that the appellant was a private corporation, and that it had made with the appellee a written contract performable in Dawson county, Tex., and establishing the venue of this suit in said county.

At the hearing upon the plea of privilege, the trial judge overruled the same, and this appeal follows.

By various propositions the appellant con-

tends that the venue of this cause should be in Ellis county, the domicile of the defendant. Its various contentions are to the effect that, since the Midway Farmers' Co-operative Society signed an order for cottonseed which it bought from the appellant, another corporation, subject to acceptance and confirmation of said appellant corporation, and both the written order and written confirmation of said sale, provided that all payments on account of the contract due either "the seller or buyer" were payable in Ellis county, the residence of the defendant; and, since the order and confirmation further provided that the whole agreement was contained therein, and that no oral statement of any agent could vary the same, and in the absence of any pleading or proof of fraud inducing the contract, the trial court should have sustained the plea of privilege and transferred the cause of action to Ellis county. Stated more briefly and in different language, the propositions are to the effect that, since the appellant and appellee agreed in writing that "all amounts due seller or buyer account of this contract are payable at the office of Atwood Pedigreed Seed Farms at Ennis, Texas, at par," the venue of the suit should have been laid in Ellis county instead of Dawson county, as was done; that, such being the written agreement between the parties, both of which are corporations, the fact that a part of the cause of action, if any, may have arisen in Dawson county, would not and could not be any limitation on the agreement that both parties had the right to make and did make.

No question of fraud is presented by the record, and that phase of the case will not be discussed.

For the purpose of passing upon the issues arising out of the venue question, the plaintiff's pleadings and the controverting affidavit to the plea of privilege are deemed sufficient as a basis for claiming the venue of the suit in Dawson county under exception 5 to the general venue statute (Rev. St. 1925, art. 1995); that exception being: "If a person has contracted in writing to perform an obligation in a particular county, suit may be brought either in such county or where the defendant has his domicile."

From the testimony it appears that the appellee, Midway Farmers' Co-operative Society, a corporation, signed an order for the cottonseed which it purchased from the appellant, the Atwood Cotton Breeding Farms, another corporation, subject to the acceptance and confirmation of said appellant corporation, and both the written order and written confirmation of said sale provided that all payments on account of the contract due either the seller or the buyer were payable in Ellis county, the county of appellant's residence. If this represents substan-

tially the entire transaction, and the shipment and delivery of the cottonseed had been made in pursuance thereof, there would be considerable doubt as to the correctness of the order of the trial court in overruling the appellant's plea of privilege, for we find in the original order and confirmation the following language relative to the character of seed and performance of the contract. The seed were to be: "Field Culled Kasch cottonseed at $2.35 per bushel, delivered to me at Rosser, Texas, and Ennis, (Ellis County) Texas, with freight charges fully prepaid to my station. All amounts due seller or buyer account this contract payable at Ennis, Texas."

From the appellant's standpoint, there is nothing else in the contents of the initial order and confirmation that would suggest that the contract of purchase and sale of the cottonseed was anything other than as indicated by these instruments. The testimony shows that the order was developed and agreed upon by negotiations that took place between the agent of the Atwood Cotton Breeding Farms and the agent of the Midway Farmers' Co-operative Society, in Dawson county, when the agent of the former called upon the agent of the latter in said county. It was out of such negotiations that the order and confirmation were submitted to the home office of the Ellis county corporation.

However, it further appears from the plaintiff's pleadings, its controverting affidavit, and the undisputed testimony, that the actual agreement and understanding carried out by the parties, and which resulted in the sale and delivery of the cottonseed, were entirely different to that indicated by the above initial negotiations. What occurred was this: The appellant, Atwood Cotton Breeding Farms, shipped the carload of cottonseed in question to Lamesa, Dawson county, Tex., consignee shipper's order collect, notify Midway Farmers' Co-operative Society, and attached to a draft for the purchase price the bill of lading issued by the carrier of the seed. When the draft and bill of lading reached the bank at Lamesa, the appellee, upon being notified, paid the same. By virtue of said instruments, with the seller's usual indorsements thereon, title and possession of the seed were obtained by the purchaser.

Such a transaction has been many times held to constitute a contract in writing by the seller to deliver to the buyer at destination the subject-matter of the contract, and that suit for a breach of such contract may be brought by the buyer against the seller in the county of destination. Marcus v. Armer, 117 Tex. 368, 5 S.W.(2d) 960, 961, 60 A. L. R. 672; Berlowitz v. Standley et al., 117 Tex. 362, 5 S.W.(2d) 963; Malone

et al. v. Dawson, 117 Tex. 377, 5 S.W.(2d) 965, 60 A. L. R.. 665; Seley et al. v. Williams, 20 Tex. Civ. App. 405, 50 S. W. 399; Scott & Mayhall v. Lubbock Grain & Coal Co., 113 Tex. 127, 252 S. W. 164.

The shipment having been thus made, and the purchaser having acquired the bill of lading with proper indorsements, and title and possession to the seed by virtue thereof, it clearly appears that the appellee correctly lays the venue of said suit in Dawson county under said exception 5, and is there entitled to a trial on the merits to determine whether or not the cottonseed received were in fact of a quality inferior to that contracted for, as alleged in the pleadings, and the resulting damages, if any.

The opinion of our Supreme Court in Marcus v. Armer, supra, furnishes the solution to all the material issues presented by the appellant on this appeal. This is the latest and most definite. expression by that court interpreting the legal effect of a bill of lading and draft attached as evidencing a written obligation upon the part of a seller of goods to deliver the same in the county of the purchaser's residence, and declaring that for a breach of such written contract suit is maintainable in the county of the purchaser's residence. The opinion also clearly indicates the effect to be given to the original contract or negotiations that, in the instant case, preceded the actual consummation of the deal, as evidenced by the shipment and delivery of the seed on bill of lading attached to draft, etc. It is this original purported contract upon which the appellant relies as the contract in writing fixing the venue of this cause in Ellis county. No effect can be given to that contract in determining the issues here presented. In the Marcus v. Armer Case there purported to be such an original contract, and it was oral. In the instant case it appears to have been in writing. The shipment of goods involved in the Marcus v. Armer Case was in a manner the same as that by which the cottonseed in the instant case were shipped and delivered. In commenting upon the right of the parties to change the initial contract or understanding in such cases, our Supreme Court said: "However, the parties had a perfect right, if they so desired, to change the original contract, and to provide for the cottonseed to be shipped from Bertram in advance of the payment of the full purchase price, and to bind the sellers to deliver the seed at Austin upon payment there of the balance of the purchase money. While the question is one involved in much confusion of thought, we have concluded that we conform to the real intention of the parties, when we construe the shippers' order bill of lading and attached sight draft, in

this case, as an offer in writing by the sellers, accepted by the buyer, modifying the original verbal agreement so as to make Austin the place of delivery of the cottonseed, and so as to prevent the title to the seed from passing to the buyer until payment of the draft."

That is exactly what occurred in the instant case, except that the contract in the instant case was in writing, whereas the one in the case referred to was "verbal," but, if an oral contract can be so modified, as held by our Supreme Court, we see no reason why a written contract cannot be modified under the same circumstances by a subsequent written contract relating to the same subject-matter. The written contract by which the seed were delivered to the purchaser in Dawson county simply superseded the initial contract or negotiations made prior thereto. It pertained to the subject-matter, and the parties had a right to make it.

For the reasons assigned, the judgment of the trial court is affirmed.