**H. L. EDWARDS & CO. v. WOLF & LAW-SON.   (No. 3595.)**

Court of Civil Appeals of Texas.   Texarkana.
Dec. 19, 1928.

Rehearing Denied Jan. 10, 1929.

Smithdeal, Shook, Spence & Bowyer, and Phillips, Townsend & Phillips, all of Dallas, for appellant.

Robbins & Bailey, of Clarksville, for appellees.

LEVY, J. (after stating the facts as above). [1-3] The points presented on appeal, in effect, are that the contract was not for sale of a specific 100 bales of cotton, but an executory agreement to sell 100 bales of cotton, not described except as to class, and the uncontradicted evidence showed that it was not the intention of the parties that the property in the cotton should pass until delivery by Wolf & Lawson to the railroad company at Annona on signed bill of lading. The weight of authority is to the effect that an action for the price cannot be maintained, unless the property has passed in the chattels sold. It is at variance with legal principles to permit the seller to force title upon the buyer by merely electing to do so. But, where the property has passed to the buyer, the seller may maintain an action for the price of the goods sold.

The general rule is that the property in the chattels sold is transferred to the buyer at such time as the parties intend it to be transferred, although the time of payment or the time of delivery, or both, be postponed, in case the contract is one for the sale of specific or ascertained chattels. 35 Cyc. p. 277; 5 Elliott on Contracts, § 5016; Owens v. Clark, 78 Tex. 547, 15 S. W. 101; Brewer v. Blanton, 66 Tex. 532, 1 S. W. 572; and other like cases. The cases are quite unsuitable as analogies, where the real question was not whether the property had vested in the buyer, but whether it so absolutely vested as to take away the lien of the seller, or his right to stop in transitu.

The trial court found as a fact that the 100 bales of cotton, consisting of 50 bales of middling, 25 bales strictly middling, and 25 bales low middling, had been weighed, tagged, and listed in record form and were in the possession and control of plaintiffs, and that there was nothing further or necessary to be done to put them in a deliverable state. 83 bales of the cotton were assembled on the cotton platform in Annona, and 17 bales were assembled in Box Elder. In such facts the court's conclusion was warranted, namely, that there was a contract for the sale of 100 specific and ascertained bales of cotton deliverable at the time. It is believed that the court's further conclusion was warranted under the facts found by him, that the parties intended the property or title in the 100 bales of cotton to be transferred to H. L. Edwards & Co. immediately, and not on delivery to the railway company on signed bill of lading. The intention became a question of fact for the trial court, and the appellate court may not set aside such conclusion, in view of the findings of fact. The intention is not clearly and unequivocally manifested in the language of the agreement, when the evidence of Mr. Rose and Mr. Wolf is considered. The evidence of Mr. Rose goes to show a contract of sale dependent upon, and effective only on, delivery of the 100 bales to the railroad company on signed bill of lading. A different intention may be inferred from the evidence of Mr. Wolf. In this situation the court had regard, in determining the intention, as he was authorized to do, to the conduct of the parties and the other circumstances of the case. The court found as a circumstance bearing upon and showing intention, viz.: "Immediately thereafter, upon closing the deal, Mr. Rose called H. L. Edwards & Company by telephone at Dallas and informed Mr. Kerr, agent acting for H. L. Edwards & Company, that he had purchased the 100 bales of cotton, and described it as Annona Cotton, 100 bales, consisting of 50 middlings, 25 strict middlings, and 25 strict lows. Upon receipt of such information H. L. Edwards & Company entered the list of cotton upon their books as their cotton and notified the insurance company who carried their insurance."

As laid down, slight acts or circumstances of control of the chattels are often sufficient to evince an intention to pass the property in the chattel sold, where the intention is not

clearly and unequivocally manifested in the language of the agreement.

Mr. Rose was, as determined by the trial court, a special agent for H. L. Edwards & Co.; and such finding has support in the evidence.

The judgment is affirmed.