## H. L. EDWARDS & CO. v. WOLF et al.
### (No. 1303—5384.)

Commission of Appeals of Texas, Section A. Feb. 5, 1930.

Phillips, Townsend & Phillips, Tom Scurry, and Smithdeal, Shook, Spence & Bowyer, all of Dallas, for plaintiff in error.

Robbins & Bailey, of Clarksville, for defendants in error.

CRITZ, J. This suit was instituted in the district court of Red River county, Texas, by Wolf & Lawson, a partnership engaged in the cotton business, against H. L. Edwards & Co., a corporation, and one C. A. Rose, both of whom were also engaged in the same business, to recover $9,353.50, alleged as a balance due and unpaid on the contract purchase price of 100 bales of cotton alleged to have been sold and delivered at Annona, in Red River county. Trial in the district court resulted in a judgment for the plaintiffs in that court against H. L. Edwards & Co. and in favor of C. A. Rose. Edwards & Co. appealed to the Court of Civil Appeals for the Sixth District at Texarkana, which court affirmed the judgment of the trial court. 12 S.W.(2d) 1056. The case is now before the Supreme Court on writ of error granted on application of H. L. Edwards & Co.

The facts, as found by the trial court, and adopted by the Court of Civil Appeals, are set out in full in the opinion of the Court of Civil Appeals, and in the interest of brevity we refer to and adopt the findings of that court. However, we copy the following portion of such findings, as the facts therein stated, in our opinion, are decisive of this appeal:

"On October 23, 1927, W. H. Wolf, one of the plaintiffs, called C. A. Rose by telephone, and the following was the conversation between them: Mr. Wolf inquired of Mr. Rose whether he wanted to buy 90 bales of cotton. Mr. Rose inquired as to whether Wolf & Lawson could furnish as much as 100 bales. Mr. Wolf stated that he would look over his cotton list and make answer, and, after doing so, replied that they had and could furnish 100 bales, giving Mr. Rose the number of each bale, and the class, grade, and weight. Mr. Rose then inquired as to the price wanted for the cotton, and Mr. Wolf replied that they wanted 22 cents per pound. Mr. Rose then informed Mr. Wolf that he would first have to submit the matter to his house— meaning H. L. Edwards & Co. Mr. Rose at once called H. L. Edwards & Co. by telephone at Dallas and described the 100 bales of cotton, and they told him they would pay a price of 22.10 cents per pound for the 100 bales. Mr. Rose in turn called W. H. Wolf by telephone and informed him · that his house, meaning H. L. Edwards & Co., would give 21¾ cents per pound for the cotton; whereupon W. H. Wolf stated that they (Wolf & Lawson) would accept the offer of 21¾ cents .for the cotton. Mr. Rose then told Mr. Wolf to ship the cotton to him the next day at Clarksville, with draft attached to the bill of lading for the amount of the 100 bales at the contract price, which plaintiffs agreed to do. Immediately thereafter Mr. Rose called H. L. Edwards & Co. by telephone at Dallas, and informed Mr. Kerr, agent acting for H. L. Edwards & Co., that he had purchased the 100 bales of cotton, and described it as Annona cotton, 100 bales, consisting of 50 middlings, 25 strict middlings, and 25 strict lows. Upon receipt of that information, H. L. Edwards & Co. entered the list of cotton upon .their books as their cotton, and notified the insurance company who carried their insurance."

It is also shown that during the night following the making of the above agreement 83 bales were burned, and were therefore never tendered or shipped. Seventeen bales were accepted and paid for, on agreement that it was done without prejudice.

The plaintiff in error has assailed the correctness of the findings of the Court of Civil Appeals in several particulars, but we deem it unnecessary to consider these matters, as the judgment of that court must be reversed, and here rendered, under the findings as they stand.

In our opinion, the findings found by the trial court, which, in effect, are adopted by the Court of Civil Appeals, and the undisputed records show as a matter of law that the agreement for the purchase and sale of the cotton in question was nothing more than an executory contract, and the sellers, not having performed the things necessary to pass title, or give the right of possession to the purchaser, are not entitled to recover for

the contract purchase price. Lange & Wineberger y. Rickmers, 70 Tex. 108, 7 S. W. 527; Marcus v. Armer, 117 Tex. 368, 5 S.W.(2d) 960, 60 A. L. R. 672; Berlowitz v. Standley, 117 Tex. 362, 5 S.W.(2d) 963; Malone v. Dawson, 117 Tex. 377, 5 S.W.(2d) 965, 60 A. L. R. 665; "Annotations" under Marcus v. Armer, 60 A. L. R. 677.

The legal effect of the instant agreement is that the parties thereto made an executory contract evidencing an intention that the sellers should deliver the cotton to the railroad company, consigned to Rose, and should receive payment therefor on presentation of a draft with bill of lading attached. Under this agreement, Rose could not get the cotton without the bill of lading, and he could not get the bill of lading without paying the draft. Thus the sellers were enabled to retain title and possession until they received payment, and the buyer was insured title and possession when he paid for the cotton by paying the draft. There is nothing in the contract evidencing an intention that either title or right of possession should pass to the buyer until the seller should carry out his agreement by delivering the cotton to the carrier, consigned as agreed, and the buyer should pay therefor by paying the draft, to which the bill of lading would be attached. In other words, we hold, under the undisputed facts of this case, that it must be ruled by the law as announced in the authorities above cited.

In this connection we wish to say, however, that we further hold that it was certainly not contemplated by the terms of the contract found that the buyer should be obligated to pay for this cotton, though it should never even be delivered to the carrier. To so hold would be to make a new contract for the parties, and would, in effect, be giving the contract actually made a construction which would bind him to pay for a thing never delivered to him, when delivery was clearly contemplated as a condition precedent to the right to demand payment.

In 60 A. L. R. 677, following "Annotations" under Marcus v. Armer, supra, the rule of law which we think rules the instant case, is declared in the following language:

"It is generally held, where there is a consignment of goods to the seller or order and a sight draft drawn against the buyer for the purchase price is attached to the bill of lading and forwarded for collection, that the seller thereby manifests an intention to preserve his property in the goods, and that title does not pass until the draft is paid. While the cases are concerned primarily with the question of when title passes, the inference is that the title passes at the place of destination, when the draft is paid and the bill of lading is delivered."

An examination of the authorities listed under the authority last above mentioned will show that the rule of law announced by our Supreme Court in the early case of Lange & Wineberger v. Rickmers, and reannounced by that court in the very recent cases of Marcus v. Armer, Berlowitz v. Standley, and Malone v. Dawson, and followed in the instant case, is supported by almost universal authority. It is the rule laid down by the courts of England, Canada, the United States Supreme Court, and the courts of last resort of practically all of the states of this country.

The Court of Civil Appeals cites in support of its holding that title to the cotton in question passed to the buyer by the terms of the original contract without delivery, among other authorities, 35 Cyc. 277. The rule announced by this authority is as follows:

"When the contract is for the sale of specific or ascertained goods the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred, or in other words, if the goods are specific whether the contract of sale is executed or executory depends solely on the intention of the parties, or as otherwise expressed, where neither the statute of frauds nor the rights of creditors are involved, the title will pass whenever the parties intend it to; and while this intention must be manifested at the time the bargain is made, it may be shown by circumstances as well as declarations, and very slight acts are often sufficient to evince such intention. The parties may make whatever agreement they see fit as to when the title shall pass, and where the language of the agreement clearly and unequivocally manifests such intention, it will control; but if, as frequently happens, the intention is not clearly manifested, it must be ascertained by the rules of construction, considering not only the language of the agreement, but also the subject-matter, situation of the parties, and other circumstances surrounding the transaction. The courts have laid down certain rules in regard to when title passes, based upon the performance or nonperformance of certain acts, or the existence or non-existence of certain facts and circumstances, but they are merely rules of evidence to aid in ascertaining the intention of the parties; and while a more or less conclusive presumption arises therefrom that the title was or was not intended to pass, it is not conclusive, and will not control if a contrary intention is otherwise shown. So where the intention of the parties is not clear, but must be determined from the facts and circumstances of the case, it is a question of fact for the jury."

We have no fault to find with the above rule. What we hold is that the contract in question in the instant case is, as a matter of law, executory, and that this intention is

plainly and conclusively manifest on the face of the contract as found. For the reasons stated, we hold in the instant case that judgment should have been for H. L. Edwards & Co.

We recommend that the judgments of the district court and the Court of Civil Appeals be both reversed, and judgment here rendered for H. L. Edwards & Co.

CURETON, C. J. The judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.