## COTTON CONCENTRATION CO. v. HENSHAW & SANDERS, Inc., et al.

### No. 5974.

Circuit Court of Appeals, Fifth Circuit.

Feb. 18, 1931.

Rehearing Denied March 19, 1931.

Mart H. Royston, of Galveston, Tex., and Geo. S. Wright, of Dallas, Tex. (Mart H. Royston, of Galveston, Tex., Geo. S. Wright and Thompson, Knight, Baker & Harris, all of Dallas, Tex., and Royston & Razor, of Galveston, Tex.; on the brief), for appellant.

Fred R. Switzer, C. M. Hightower, and Carl G. Stearns, all of Houston, Tex., and John Neethe, of Galveston, Tex. (Fulbright, Crooker & Freeman, Carl G. Stearns, Vinson, Elkins, Sweeton & Weems, Fred R. Switzer, and C. M. Hightower, all of Houston, Tex., and John Neethe and Williams, Neethe and Williams, all of Galveston, Tex., on the brief), for appellees.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action brought by the appellee Henshaw & Sanders, Inc., a Rhode Island corporation, against the individuals composing the partnership doing business under the name H. Kempner, herein referred to as Kempner, the Mallory Steamship Company, the Galveston Wharf Company, and the appellant, the Cotton Concentration Company, a Texas corporation. The amended petition asserted claims growing out of the destruction on January 13, 1926, of 86 bales of cotton located in the Galveston Wharf Company's Pier 26 by a fire which started in cotton of the appellant stored in Pier 23 and spread to Pier 26, which with Piers 24 and 25 were leased to and used by the Mallory Steamship Company; the four piers mentioned being under one roof. The petition first set out appellee's claim against Kempner, and, "in the alternative only, and in the event that for any reason the plaintiff should fail to recover upon the cause of action as pleaded" against Kempner, asserted the claims against the other parties sued; the cause of action asserted against the Galveston Wharf Company being based on allegations charging negligence in the operation of its engines over its switch tracks which extended into its Piers 23, 24, and 25; the cause of action asserted against the appellant being based on allegations to the effect that the starting and the spread of the fire were caused or contributed to by negligence chargeable against it. The amended petition contained allegations to the effect that on or about January 25, 1926, the plaintiff (appellee) became and still is the owner of said 86 bales of cotton and the owner and holder of the documents covering the same, and succeeded to all rights and claims of Kempner against the Mallory Steamship Company, and the appellant. The allegations of that pleading were put in issue by the appellant. Pursuant to an agreement of all the parties, the court segregated and tried separately, first, the issues between appellee and Kempner, with the result that verdict and judgment were rendered in favor of the latter. Thereafter trial of the issues between the appellee and the other parties was proceeded with, with the results that verdicts and judgments were rendered in favor of the Mallory Steamship Company and the Galveston Wharf Company, and against the appellant. The appellant assigned as errors sundry rulings of the court, including its action in denying a motion of the appellant for an instructed verdict in its favor.

Evidence showed the following: Prior to January 8, 1926, by contract in writing between Kempner and appellee, the former agreed to sell to the latter 200 bales of described cotton, to be shipped to Drummondsville, province of Quebec, Canada, during January or February, at the former's option, the latter to pay sight draft on it for the agreed price, with bill of lading and copy of invoice attached; insurance covered by seller until issue of bill of lading, insurance in transmit to be effected by the buyer. The contract provided for it being governed by "Revised New England Terms for Buying and Selling American Cotton," which included the following:

"When a sale is made for shipment in a certain month or months, cotton may be shipped at any time the shipper may elect during the month or months specified, but shipments must be made and bills of ladings dated within the month or months specified.

"Unless otherwise specified on sales notes, the purchaser shall cover all his cotton with transit insurance.

"Upon the issuance of a bill of lading for cotton by a common carrier, the shipper's responsibility for insurance thereon shall terminate."

On January 8 Kempner arranged with the Mallory Steamship Company to deliver to it at Galveston 100 bales of cotton; the destination stated being Drummondsville, province of Quebec. Under that arrangement the steamship company was not expected to issue a bill of lading until the completion of the delivery to it of 100 bales of cotton, unless the shipper canceled the

original order and asked for a bill of lading for a smaller number of bales delivered. Under that arrangement 86 bales of cotton were delivered to the steamship company at its dock on January 12. Prior to the fire, Kempner made no request for a bill of lading for less than 100 bales of cotton, and no bill of lading was issued. The Mallory Steamship Company was engaged in coastwise traffic. Its rules and regulations, which had been approved by the Interstate Commerce Commission, included a storage rule in the following words: "Shipment in process of assembling will be held in or on the docks entirely at owner's risk." A member of the Kempner firm testified: "We know that the cotton was there at the owner's risk. * * * The cotton was there pending shipment at the owner's risk as between the Mallory Line and ourselves." After the fire Kempner obtained from the Mallory Steamship Company a bill of lading to itself for 86 bales of cotton "consigned to order of Shipper, Destination, Drummondsville, State of P. Q. Notify Jenckes Canadian Company, Ltd., at Drummondsville, State of P. Q." That instrument contained the following: "The cotton covered by this bill of lading was delivered on the dock at Galveston on January 12, 1926, and was burned on the night of January 13-14, 1926. Liability as a carrier is not assumed by the issuance of this bill of lading."

After the fire there was telegraphic correspondence between Kempner and appellee, from which it appeared that the former had no insurance on the 86 bales of cotton, and that it claimed that that cotton was covered by insurance obtained by the appellee. The basis of that claim was indicated in a telegram of Kempner to appellee, dated January 15, which stated: "Answering your second message think your brokers clearly wrong. We have always understood that buyers insurance covers from time goods in custody of steamer or agents the issuance of bill lading in place of dock receipt is mere perfunctory act showing destination stop Steamship ladings do not necessarily indicate that cotton is actually on board vessel hence no greater risk to insurance company involved stop We are informed that other insurance companies under similar conditions are today acknowledging liability upon sellers statement that sellers insurance ceases when delivery made to steamship company stop. We insist your company is liable under the terms of sale. See your confirmation to us please give us name of your insurance company or buyers insurance company as the case may be. Stop will appreciate your co-operation to protect us as we are absolutely without protection otherwise and not a matter of carelessness reason lading not signed was that delivery was made late in afternoon on twelfth and goods were subjected to no greater fire risk than if lading had been actually signed."

The appellee denied that claim, but entered into an agreement with Kempner which was evidenced by the following telegrams:

A telegram, dated January 16, 1926, from appellee to Kempner, stating: "Regarding eighty-six bales Mallory fire you can draw on us with Mallory Line Dock receipt attached provided you guarantee us against any possible loss up to amount your invoice for this cotton and agree to reimburse us for any expense incurred in handling this claim stop. We believe that we can handle this claim satisfactorily through our brokers Hagedorn & Co and our company the Insurance Company of North America and are wiring you to draw on us upon advice received from Hagedorn and Co., but we naturally want every assurance of protection. Please answer before Monday as we shall probably want to fix price on Monday which we understand is to be done by buying one March your account Hentz Stop. Advise our purchase number against which this cotton was being shipped eighty six bales of which will have been fulfilled provided we pay your draft stop. Will co-operate with you in this matter to the fullest."

A telegram of Kempner to appellee, dated January 18, in reply to the one just set out, stating: "We appreciate your co-operation and are willing agree between us to hold you harmless from loss up to amount of the invoice and for expenses incurred in handling the claim provided this strictly a matter between you and us stop. We feel that we have under our contract a claim against your insurance company and or against the Mallory Line and any arrangement between us must be without prejudice to our rights and with distinct understanding that if we are called on to reimburse you in any amount you will assign to us any valid legal claim you have on the Insurance Company of North America stop. Buy one March for our account through Hentz applying against your purchase number four fifty nine A."

And a telegram dated January 18, from appellee to Kempner, stating: "Your telegram received contents satisfactory are fixing price on opening today."

A letter of the appellee to Kempner, dated January 18, quoted the above three telegrams last set out, and stated:

"As advised you today we are willing to undertake the handling of this claim for you on the basis as outlined in your telegram of today. We believe that we will be able to collect through our insurance people so that you will suffer no loss and we will do everything possible to bring about this end.

"It is our understanding that you are drawing on us with a Mallory Line dock receipt attached for the eighty six bales in question and that the price of this eighty six bales will be 19.37 landed. The payment of your draft for this eighty-six bales will complete that much of the cotton due against our purchase No. 459–A.

"Assuring you that we are anxious to co-operate with you to the fullest in this matter, we are. * * *"

Kempner drew a sight draft on appellee as provided for in the contract evidenced by the above set out telegrams, and that draft was paid by appellee.

As above indicated, at the time of the fire, there was in existence an executory contract under which Kempner was to deliver cotton to a carrier, and was to receive payment therefor on presentation of a draft with bill of lading attached. Under that contract appellee could not get the cotton without getting the bill of lading for it, and it could not get the bill of lading without paying the draft. The contract evidenced the intention of the parties that Kempner's title and right of possession should not pass to appellee before the issuance of a bill of lading for cotton shipped and appellee's payment of the stipulated sight draft with the bill of lading attached. The provisions of the contract as to insurance quite plainly show that, as to cotton set apart for shipment and put in the possession of the chosen carrier, the parties intended the title and ownership to remain in Kempner at least until the issue of a bill of lading for it; one of those provisions being to the effect that insurance was to be covered by Kempner "until issue of bill of lading." The terms of the contract negative the existence of an intention that either title or right of possession should pass to the appellee prior to the issue of a bill of lading for cotton shipped and the payment by appellee of a draft on it for the agreed price with the bill of lading attached. Canadian Northern Ry. Co. v. Northern Miss. Ry. Co. (C. C. A.) 209 F. 758; H. L. Edwards & Co. v. Wolf (Tex. Com. App.) 23 S.

W.(2d) 700; Wormser Bros. v. F. Marroquin (C. C. A.) 249 F. 428, 430. At the time the 86 bales of cotton were burned, they were owned by Kempner, and the appellee had no title to, or property right in, them. It follows that a cause of action asserted based on alleged negligence which caused or proximately contributed to the destruction of that cotton accrued in favor of Kempner, and not in favor of the appellee.

The claim that appellee acquired the last-mentioned asserted cause of action was based on the above-described transaction between Kempner and appellee after the fire. By that transaction the appellee agreed to pay Kempner's sight draft on it for the agreed price of the destroyed 86 bales of cotton, and to assert in its own name, but for the benefit of Kempner, a claim against appellee's insurer for the loss of that cotton; and Kempner agreed to guarantee appellee against loss up to the amount of Kempner's invoice for that cotton, and to reimburse the appellee for any expenses incurred by the latter in handling such claim against the latter's insurer. That transaction included no provision for the acquisition by the appellee of any right of action which accrued in favor of Kempner alone. The only reference in the instruments evidencing that transaction to any of the causes of action asserted by the appellee in this suit is found in the following statement contained in Kempner's telegram to appellee, dated January 18: "We feel that we have under our contract a claim against your insurance company and or against the Mallory Line and any arrangement between us must be without prejudice to our rights and with distinct understanding that if we are called on to reimburse you in any amount you will assign to us any valid legal claim you have on the Insurance Company of North America stop."

It is to be noted that it was expressly stipulated that the arrangement as to asserting a claim against appellee's insurer was to be without prejudice to Kempner's rights, and that the only provision as to appellee assigning or transferring anything to Kempner in the event of Kempner being called on to reimburse appellee in any amount was the one as to appellee assigning to Kempner any valid claim of appellee against the named insurance company. It is to be inferred that, if there had been an intention to transfer to appellee a cause of action vested in Kempner, provision would have been made for a retransfer of it to Kempner in the event of the appellee failing to enforce the claim against its insurer and thus becoming en-

titled to be reimbursed by Kempner. The only claim asserted in this suit which in any way was referred to in the instruments evidencing the transaction now under consideration was the one against the Mallory Steamship Company, which was so mentioned as to negative the existence of an intention to transfer or assign that claim to appellee. The language of those instruments is inconsistent with the existence of an intention of the parties that that transaction was to have the effect of transferring to appellee any cause of action, other than one against an insurer, which had been acquired by Kempner as a result of the burning of the 86 bales of cotton. That transaction furnishes no basis for a valid claim that appellee acquired the asserted cause of action against the appellant. That cause of action, if it existed, accrued in favor of Kempner, and there was no evidence tending to prove that it was acquired by appellee. It follows that the court erred in refusing to give the above-mentioned instruction. Because of that error, the judgment is reversed, and the cause is remanded, with direction that a new trial be granted.

Reversed.